## FLANAGAN ET AL. *v.* UNITED STATES

No. 82–374.   Argued November 30, 1983—Decided February 21, 1984

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Edward H. Rubenstone* argued the cause for petitioners. With him on the briefs was *Richard A. Sprague.*

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the brief was *Solicitor General Lee, Assistant Attorney General Trott, Richard G. Wilkins,* and *Peter D. Isakoff.**

JUSTICE O'CONNOR delivered the opinion of the Court.

In *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U. S. 368 (1981), the Court held that a pretrial denial of a motion to disqualify counsel in a civil case is not appealable prior to trial under 28 U. S. C. § 1291 as a final collateral order. The Court reserved the questions of the immediate appealability of pretrial denials of disqualification motions in criminal cases and of pretrial grants of disqualification motions in both criminal and civil cases. *Id.,* at 372, n. 8. We decide today that a District Court's pretrial disqualification of defense counsel in a criminal prosecution is not immediately appealable under 28 U. S. C. § 1291.

I

Petitioners are four police officers who formed a "grand-pop" decoy squad in the Philadelphia Police Department. Petitioner Flanagan would pose as an aged derelict, a likely target for street criminals. When Flanagan gave the standard alarm, the other members of the decoy team would move in to make an arrest.

---

*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union by *James D. Crawford, Burt Neuborne,* and *Charles S. Sims;* and for the National Association of Criminal Defense Lawyers et al. by *Eugene G. Iredale* and *James M. Shellow.*

A federal grand jury in the Eastern District of Pennsylvania indicted petitioners in September 1981. The indictment alleged that petitioners had conspired to make arrests without probable cause and had unlawfully arrested and abused eight people. One count of the indictment charged petitioners with conspiring to deprive citizens of their civil rights in violation of 18 U. S. C. § 241. The remaining 12 counts charged petitioners, in various combinations, with committing substantive civil rights offenses in violation of 18 U. S. C. § 242.

Prior to the return of the indictment, petitioners had retained the law firm of Sprague and Rubenstone to act as joint counsel. Petitioners decided to continue the joint representation after the indictment was handed down, even though the indictment did not make the same allegations against all petitioners. Petitioners Keweshan, Landis, and McNamee, however, moved to sever their case from petitioner Flanagan's, arguing that the Government's evidence against Flanagan alone was so much greater than the evidence against them that severance was necessary to avoid prejudicial spillover. In addition, based on the asserted differences in their involvement in the activities alleged in the substantive counts of the indictment, petitioners moved to dismiss the conspiracy count. The Government responded by moving to disqualify Sprague and Rubenstone from its multiple representation of petitioners and by asking the court to inquire into the representation as required by Federal Rule of Criminal Procedure 44(c).[1]

---

[1] Federal Rule of Criminal Procedure 44(c) provides:

"Whenever two or more defendants have been jointly charged . . . or have been joined for trial . . . , and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel."

In early December 1981, following a hearing and briefing on the Government's motion, the District Court disqualified the law firm from participation in the case. The court found that no actual conflict of interest had yet developed but that there was a clear potential for conflict. Most notably, the severance motion and supporting papers showed that petitioner Flanagan's interests were likely to diverge from the other petitioners' interests. The District Court also found that petitioners had voluntarily, knowingly, and intelligently waived their right to conflict-free representation. The court concluded, however, that it had the authority and, indeed, the obligation under Rule 44(c) to disqualify counsel when "the likelihood is great that a potential conflict may escalate into an actual conflict." 527 F. Supp. 902, 909 (ED Pa. 1981). The court presumed that Sprague and Rubenstone had obtained privileged information from each of the petitioners and therefore disqualified the law firm from representing any of them.

Petitioners appealed to the United States Court of Appeals for the Third Circuit, which affirmed the decision of the District Court in June 1982. 679 F. 2d 1072. Although jurisdiction was not challenged, the Court of Appeals noted that it had jurisdiction under 28 U. S. C. § 1291 because the disqualification order was appealable prior to trial as a collateral order within the meaning of *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541 (1949). The court went on to hold that the disqualification order was proper because an actual conflict of interest was very likely to arise. In July 1982 the court denied rehearing but stayed issuance of the mandate to permit filing of a petition for a writ of certiorari in this Court.

Petitioners filed their petition in September 1982, one year after the grand jury had returned the indictment against them. They contended that disqualification of counsel of their choice after they had knowingly waived conflict-free representation deprived them of their Sixth Amendment right to assistance of counsel and of their Fifth Amendment

due process right to present a common defense through joint counsel. We granted certiorari in January 1983. 459 U. S. 1101. The parties briefed and argued both the merits and the jurisdictional question—whether the disqualification order was immediately appealable under 28 U. S. C. § 1291. We now reverse the judgment of the Court of Appeals because we conclude that the court had no jurisdiction to review the disqualification order prior to entry of final judgment in the criminal case.[2]

## II

"Finality as a condition of review is an historic characteristic of federal appellate procedure." *Cobbledick* v. *United States*, 309 U. S. 323, 324 (1940). Thus, the jurisdictional statute applicable to this case limits the jurisdiction of the courts of appeals to appeals from "final decisions of the district courts." 28 U. S. C. § 1291. This final judgment rule requires that "a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U. S., at 374. In a criminal case the rule prohibits appellate review until conviction and imposition of sentence. *Berman* v. *United States*, 302 U. S. 211, 212 (1937).

The final judgment rule serves several important interests. It helps preserve the respect due trial judges by minimizing

---

[2] Among the Courts of Appeals, six Circuits in addition to the Third Circuit have allowed immediate appeal of pretrial disqualifications of criminal defense counsel. *United States* v. *Curcio*, 694 F. 2d 14, 19–20 (CA2 1982); *United States* v. *Smith*, 653 F. 2d 126 (CA4 1981) (entertaining appeal without discussion of appealability question); *United States* v. *Garcia*, 517 F. 2d 272, 275 (CA5 1975); *United States* v. *Phillips*, 699 F. 2d 798, 801 (CA6 1983); *United States* v. *Agosto*, 675 F. 2d 965, 968, n. 1 (CA8), cert. denied after remand and affirmance *sub nom. Gustafson* v. *United States*, 459 U. S. 834 (1982); *United States* v. *Hobson*, 672 F. 2d 825, 826 (CA11), cert. denied, 459 U. S. 906 (1982). The Ninth Circuit has held that such orders are not immediately appealable. *United States* v. *Greger*, 657 F. 2d 1109, 1110–1113 (1981), cert. denied, 461 U. S. 913 (1983).

appellate-court interference with the numerous decisions they must make in the prejudgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals. It is crucial to the efficient administration of justice. *Firestone Tire & Rubber Co.* v. *Risjord, supra,* at 374. For these reasons, "[t]his Court has long held that the policy of Congress embodied in [§ 1291] is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation . . . ." *United States* v. *Hollywood Motor Car Co.,* 458 U. S. 263, 265 (1982).

The Court has also long held that "this policy is at its strongest in the field of criminal law." *Ibid.* More than 40 years ago the Court noted that the reasons for the final judgment rule are "especially compelling in the administration of criminal justice." *Cobbledick* v. *United States, supra,* at 325. Promptness in bringing a criminal case to trial has become increasingly important as crime has increased, court dockets have swelled, and detention facilities have become overcrowded.

As the Sixth Amendment's guarantee of a speedy trial indicates, the accused may have a strong interest in speedy resolution of the charges against him. In addition, "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker* v. *Wingo,* 407 U. S. 514, 519 (1972). As time passes, the prosecution's ability to meet its burden of proof may greatly diminish: evidence and witnesses may disappear, and testimony becomes more easily impeachable as the events recounted become more remote. Delay increases the cost of pretrial detention and extends "the period during which defendants released on bail may commit other crimes." *United States* v. *MacDonald,* 435 U. S. 850, 862 (1978). Delay between arrest and punishment prolongs public anxiety over community safety if a person accused of a serious crime is free on bail. It may also adversely affect the prospects for rehabilitation. See *Barker* v. *Wingo, supra,* at

520. Finally, when a crime is committed against a community, the community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice. Prompt acquittal of a person wrongly accused, which forces prosecutorial investigation to continue, is as important as prompt conviction and sentence of a person rightly accused. Crime inflicts a wound on the community, and that wound may not begin to heal until criminal proceedings have come to an end.

The importance of the final judgment rule has led the Court to permit departures from the rule "only when observance of it would practically defeat the right to any review at all." *Cobbledick* v. *United States, supra,* at 324–325 (footnote omitted). The Court has allowed a departure only for the "limited category of cases falling within the 'collateral order' exception delineated in *Cohen . . . ." United States* v. *Hollywood Motor Car Co., supra,* at 265.[3] To come within this "narrow exception," *Firestone Tire & Rubber Co.* v. *Risjord, supra,* at 374, a trial court order must, at a minimum, meet three conditions. First, it "must conclusively determine the disputed question"; second, it must "resolve an important issue completely separate from the merits of the action"; third, it must "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463, 468 (1978) (footnote omitted).

Because of the compelling interest in prompt trials, the Court has interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases. The Court has found only three types of pretrial orders in criminal prosecutions to meet the

---

[3] Title 18 U. S. C. § 3731 provides a statutory exception to the final judgment rule for certain orders suppressing or excluding evidence. That provision is not at issue in this case, which concerns only the finality requirement of 28 U. S. C. § 1291. This case likewise does not involve the finality problems that arise in appeals from state-court decisions to this Court under 28 U. S. C. § 1257. See *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469 (1975).

requirements. See *United States* v. *Hollywood Motor Car Co.*, 458 U. S., at 265. Each type involves "'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Id.*, at 266 (quoting *United States* v. *MacDonald*, *supra*, at 860).

An order denying a motion to reduce bail may be reviewed before trial. The issue is finally resolved and is independent of the issues to be tried, and the order becomes moot if review awaits conviction and sentence. *Stack* v. *Boyle*, 342 U. S. 1 (1951). Orders denying motions to dismiss an indictment on double jeopardy or speech or debate grounds are likewise immediately appealable. Such orders finally resolve issues that are separate from guilt or innocence, and appellate review must occur before trial to be fully effective. The right guaranteed by the Double Jeopardy Clause is more than the right not to be convicted in a second prosecution for an offense: it is the right not to be "placed in jeopardy"—that is, not to be tried for the offense. *Abney* v. *United States*, 431 U. S. 651 (1977). Similarly, the right guaranteed by the Speech or Debate Clause is more than the right not to be convicted for certain legislative activities: it is the right not to "be questioned" about them—that is, not to be tried for them. *Helstoski* v. *Meanor*, 442 U. S. 500 (1979). Refusals to dismiss an indictment for violation of the Double Jeopardy Clause or of the Speech or Debate Clause, like denials of bail reduction, are truly final and collateral, and the asserted rights in all three cases would be irretrievably lost if review were postponed until trial is completed.

An order disqualifying counsel lacks the critical characteristics that make orders denying bail reduction or refusing to dismiss on double jeopardy or speech or debate grounds immediately appealable. Unlike a request for bail reduction, a constitutional objection to counsel's disqualification is in no danger of becoming moot upon conviction and sentence. Moreover, it cannot be said that the right petitioners assert, whether based on the Due Process Clause of the Fifth

Amendment or on the Assistance of Counsel Clause of the Sixth Amendment, is a right not to be tried. Double jeopardy and speech or debate rights are *sui generis* in this regard. See *United States* v. *MacDonald*, 435 U. S., at 860, n. 7. Rather, just as the speedy trial right is merely a right not to be convicted at an excessively delayed trial, *id.*, at 860–861, the asserted right not to have joint counsel disqualified is, like virtually all rights of criminal defendants, merely a right not to be convicted in certain circumstances. Unlike a double jeopardy or speech or debate claim, petitioners' claim "would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof." *Id.*, at 859. See also *United States* v. *Hollywood Motor Car Co.*, *supra*, at 268 (vindictive prosecution right fully protected by postconviction review). "Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." *Cobbledick* v. *United States*, 309 U. S., at 325. See also *Roche* v. *Evaporated Milk Assn.*, 319 U. S. 21, 30 (1943).

A disqualification order thus is not analogous to any of the three types of interlocutory orders that this Court has found immediately appealable in criminal cases. Accordingly, *Stack, Abney,* and *Helstoski* provide no authority for petitioners' assertion that a disqualification order satisfies the three necessary conditions for coverage by the collateral-order exception. Nor does petitioners' jurisdictional assertion gain support from a direct inquiry into whether a disqualification order satisfies the three *Coopers & Lybrand* conditions. This is so regardless of the nature of the right to joint representation claimed by petitioners.[4]

Petitioners correctly concede that postconviction review of a disqualification order is fully effective to the extent that the asserted right to counsel of one's choice is like, for example,

---

[4] We need not and do not express any view on the nature or existence of that right.

the Sixth Amendment right to represent oneself. See *Faretta* v. *California*, 422 U. S. 806 (1975). Obtaining reversal for violation of such a right does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding. See *McKaskle* v. *Wiggins, ante,* at 177–178, n. 8. Similarly, postconviction review is concededly effective to the extent that petitioners' asserted right is like the Sixth Amendment rights violated when a trial court denies appointment of counsel altogether, see *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), or denies counsel's request to be replaced because of a conflict of interest, see *Holloway* v. *Arkansas,* 435 U. S. 475 (1978). No showing of prejudice need be made to obtain reversal in these circumstances because prejudice to the defense is presumed. In sum, as petitioners concede, if establishing a violation of their asserted right requires no showing of prejudice to their defense, a pretrial order violating the right does not meet the third condition for coverage by the collateral-order exception: it is not "effectively unreviewable on appeal from a final judgment." See *supra,* at 265.

If, on the other hand, petitioners' asserted right is one that is not violated absent some specifically demonstrated prejudice to the defense, a disqualification order still falls outside the coverage of the collateral-order exception. We need not consider, however, whether the third *Coopers & Lybrand* condition is satisfied—that is, whether postconviction review is plainly ineffective. It is sufficient to note that the second *Coopers & Lybrand* condition—that the order be truly collateral—is not satisfied if petitioners' asserted right is one requiring prejudice to the defense for its violation.

On this assumption, a disqualification order, though final, is not independent of the issues to be tried. Its validity cannot be adequately reviewed until trial is complete. The effect of the disqualification on the defense, and hence whether the asserted right has been violated, cannot be fairly as-

sessed until the substance of the prosecution's and defendant's cases is known. In this respect the right claimed by petitioners is analogous to the speedy trial right. In *United States* v. *MacDonald*, *supra*, at 859, 860, the Court concluded that because impairment of the defense is an important factor in judging whether a speedy trial violation has occurred, a denial of a motion to dismiss on speedy trial grounds is not separable from the issues at trial. The same conclusion applies to a disqualification order if prejudice to the defense is a necessary element of petitioners' claim. In these circumstances, the second *Coopers & Lybrand* condition for immediate appealability as a collateral order is not satisfied: the disqualification order does not resolve an "issue completely separate from the merits of the action." See *supra*, at 265.

In short, whether or not petitioners' claim requires a showing of prejudice, a disqualification order does not qualify as an immediately appealable collateral order in a straightforward application of the necessary conditions laid down in prior cases. Further, petitioners' claim does not justify expanding the small class of criminal case orders covered by the collateral-order exception to the final judgment rule—either by eliminating any of the *Coopers & Lybrand* conditions or by interpreting them less strictly than the Court's cases have done. The costs of such expansion are great, and the potential rewards are small.

Unlike an appeal of a bail decision, see *Stack* v. *Boyle*, 342 U. S., at 12 (opinion of Jackson, J.), an appeal of a disqualification order interrupts the trial. In criminal cases such interruption exacts a presumptively prohibitive price. See *supra*, at 264–265. Moreover, an appellate court's reversal of a disqualification order would not result in dismissal of the prosecution. The prosecution would continue, though only after long delay. The potential rewards of an immediate appeal are thus even smaller than they were in *United States* v. *MacDonald*, *supra*, and in *United States* v. *Hollywood Motor*

*Car Co.*, *supra*, where the Court rejected claims of immediate appealability for orders denying motions to dismiss on speedy trial and vindictive prosecution grounds even though reversal of the orders would have led to dismissal of all or some charges. See also *Roche* v. *Evaporated Milk Assn.*, 319 U. S. 21 (1943) (no pretrial review of order denying motion to dismiss indictment for lack of jurisdiction); *Heike* v. *United States*, 217 U. S. 423, 430–431 (1910) (no pretrial review of order rejecting claim of statutory immunity from prosecution). Here, a delayed trial is a certain result of interlocutory appellate review. Allowing immediate appeal of a disqualification order thus would severely undermine the policies behind the final judgment rule.

## III

"'[T]he final judgment rule is the dominant rule in federal appellate practice.' 6 Moore, Federal Practice (2d ed. 1953), 113. Particularly is this true of criminal prosecutions." *DiBella* v. *United States*, 369 U. S. 121, 126 (1962). Nothing about a disqualification order distinguishes it from the run of pretrial judicial decisions that affect the rights of criminal defendants yet must await completion of trial court proceedings for review. Such an order fails to satisfy the stringent conditions for qualification as an immediately appealable collateral order, and the overriding policies against interlocutory review in criminal cases apply in full. The exceptions to the final judgment rule in criminal cases are rare. An order disqualifying counsel is not one.

The judgment of the Court of Appeals is accordingly reversed. On remand the appeal should be dismissed.

*It is so ordered.*