UNITED STATES of America, Appellee,

v.

Arnold GOLD, Defendant-Appellant.

No. 916, Docket 85–1403.

United States Court of Appeals,
Second Circuit.

Submitted March 10, 1986.

Decided May 7, 1986.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. (Arthur W. Mercado, Asst. U.S. Atty., New York City, of counsel), for appellee.

Thomas F. Liotti, Carle Place, N.Y., for defendant-appellant, filed brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Before KEARSE and CARDAMONE, Circuit Judges, and POLLACK, District Judge.*

KEARSE, Circuit Judge:

Defendant Arnold Gold appeals from an order of the United States District Court for the Southern District of New York, John E. Sprizzo, *Judge*, entered pursuant to 18 U.S.C. § 4241 (Supp. II 1984), finding Gold to be suffering from a mental disease or defect rendering him mentally incompetent to stand trial and committing him to the custody of the United States Attorney General for hospitalization in a suitable facility for at least four months. Gold's appointed counsel has moved pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), to be relieved as appointed counsel on the ground that the appeal presents no nonfrivolous issue. Gold has requested that new

---

* Honorable Milton Pollack, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

counsel be assigned to represent him on this appeal. We agree with Gold's counsel that the commitment order creates no non-frivolous issues for review on appeal, and we therefore affirm the order of commitment, grant counsel's motion to be relieved as appointed counsel, and deny Gold's motion for the appointment of new appellate counsel to represent him. We write here principally to clarify the matter of our jurisdiction to entertain Gold's appeal.

### Background

In August 1984, Gold was charged in a one-count indictment with having mailed a threatening communication, in violation of 18 U.S.C. § 876 (1982). The alleged communication was a four-page letter from Gold to the Manhattan District Attorney, demanding $1,000,000 and threatening to injure him. The preindictment complaint alleged that along with this letter, Gold mailed a machete. Gold was arrested and sent to the United States Medical Center for Federal Prisoners in Springfield, Missouri ("Springfield"), for evaluation. Psychiatric evaluations of Gold proceeded until February 1985; in March 1985, the government moved for Gold's commitment on the ground that he was not competent to stand trial. Judge Sprizzo scheduled a competency hearing pursuant to 18 U.S.C. § 4241.

The hearing was commenced in April 1985. At that time Dr. James R. Leach, chief of forensic psychiatry at Springfield, testified that he believed Gold "did not have the mental capacity to have a reasonable and factual understanding of the legal proceedings against him and ... that he probably could not assist his attorney in preparing his defense." Gold testified in opposition to the government's motion. He disagreed with Dr. Leach's evaluation and testified that Dr. Leach had threatened him.

At the end of the April hearing, Judge Sprizzo stated that while he thought Dr. Leach's opinion was well-founded, he was "not convinced that some of the diagnosis may not have been impacted by this defendant's uncooperative attitude at Springfield or his personal problems there." Accordingly, Judge Sprizzo ordered that Gold be examined by another forensic psychiatrist, Dr. Naomi Goldstein.

Dr. Goldstein examined Gold and advised the court of her evaluation both by letter and in testimony at a further hearing. Her August 1985 letter stated that she found Gold to be "terribly confused with substantial distortion of events around him which pertain closely and importantly to him including his legal situation," and "experiencing a series of delusional beliefs about technologies that control the mind." Dr. Goldstein noted that although Gold does not want to appear to be mentally sick,

[h]e lives in a world in which all of his behavior is considered to be the product of various untoward influences, whether it be injection, or some other form of mind control. He talks of communications within his head, of special messages and transmittors, etc. He basically blames a series of significant people for all his difficulties.

Her diagnosis was that Gold was suffering "[s]chizophrenia, chronic, undifferentiated type with significant paranoid ideation." Her

professional opinion [was] that Mr. Gold is not competent to proceed. While he has a clear understanding of the charges and the proceedings, his ability to cooperate rationally is markedly impaired by the profound delusional experiences which inform so much of his thinking.

Dr. Goldstein concluded that she did "not believe that Mr. Gold can cooperate rationally in his own defense." At the resumed hearing before Judge Sprizzo in October 1985, Dr. Goldstein reaffirmed the views stated in her August 1985 letter to the court.

After the October hearing, Judge Sprizzo entered an order of commitment pursuant to 18 U.S.C. § 4241(d). Based on the testimony of Drs. Goldstein and Leach, and on letters written to the court by Gold, the court concluded that Gold was "presently suffering from a mental disease or defect rendering him mentally incompetent to stand trial," and it accordingly ordered that

Gold be committed to the custody of the United States Attorney General for hospitalization in a suitable facility. The commitment was for a period of four months to determine whether there was a substantial probability that in the foreseeable future Gold would attain the capacity to permit the trial to proceed, "and for an additional reasonable period of time as provided ... in 18 U.S.C. § 4241(d)(2)."

This appeal followed.

### Appellate Jurisdiction

Section 4241(a) of 18 U.S.C. provides that, upon motion of the government, the defendant, or the court, the court shall conduct a hearing to determine the mental competency of the defendant if there is reasonable cause to believe the defendant is not competent to stand trial. Section 4241(d) provides as follows:

If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or

(B) the pending charges against him are disposed of according to law; whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246.

18 U.S.C. § 4241(d). Section 4246 provides for the indefinite hospitalization of a person who is otherwise due to be released from commitment but who is suffering from mental disease or defect as a result of which his release would create a substantial risk of harm to the person or property of another. 18 U.S.C. § 4246 (Supp. II 1984). Although the government has not raised the matter, there is a question as to our jurisdiction to entertain an appeal from a § 4241(d) order.

Section 1291 of 28 U.S.C. gives the courts of appeals jurisdiction over appeals from all final decisions of the district courts. In a criminal case this rule of finality generally prohibits appellate review until there has been a conviction and a sentence has been imposed. *Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 1053, 79 L.Ed.2d 288 (1984). The interest in achieving a prompt disposition of criminal charges has led the courts to interpret the final judgment rule "with the utmost strictness in criminal cases," *id.* at 264–65, 104 S.Ct. at 1054–55; *see also United States v. MacDonald*, 435 U.S. 850, 853–54, 861–63, 98 S.Ct. 1547, 1548–49, 1553–54, 56 L.Ed.2d 18 (1978), and to permit departures from the rule " 'only when observance of it would practically defeat the right to any review at all,' " *Flanagan v. United States*, 465 U.S. at 265, 104 S.Ct. at 1055 (quoting *Cobbledick v. United States*, 309 U.S. 323, 324–25, 60 S.Ct. 540, 540–41, 84 L.Ed. 783 (1940)).

The principal departure from the final judgment rule is the "collateral order" doctrine announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), under which a small class of orders "which finally determine claims of right separable from, and collateral to, rights asserted in the action," and which are too important and too inde-

pendent of the cause itself to be denied immediate review, are allowed to be appealed under § 1291 before final judgment has been entered. *Id.* at 546, 69 S.Ct. at 1225. In applying the *Cohen* doctrine to criminal cases, the Supreme Court has stated that the order from which appeal is sought "must, at a minimum, meet three conditions. First, it 'must conclusively determine the disputed question'; second, it must 'resolve an important issue completely separate from the merits of the action'; and third, it must 'be effectively unreviewable on appeal from a final judgment.'" *Flanagan v. United States,* 465 U.S. at 265, 104 S.Ct. at 1055 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)).

In applying these criteria in criminal cases, the Court has thus far found only three categories of pretrial orders that warrant departure from the final judgment rule: denials of bail motions, *see Stack v. Boyle,* 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 1 (1951); denials of motions to dismiss on grounds of double jeopardy, *see Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); and denials of motions to dismiss under the Speech and Debate Clause of the Constitution, *see Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). The Court found that each of these types of orders involved an asserted right whose legal and practical value would be destroyed if the right were not vindicated before trial. *Flanagan v. United States,* 465 U.S. at 266, 104 S.Ct. at 1055; *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 266, 102 S.Ct. 3081, 3083, 73 L.Ed.2d 754 (1982) (per curiam); *United States v. MacDonald,* 435 U.S. at 860, 98 S.Ct. at 1552. As to many other types of pretrial orders, the Court has found lacking the requisite independence, finality, or eventual unreviewability to warrant immediate appellate review. *See, e.g., Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051 (granting of motion to disqualify defense counsel); *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 102 S.Ct. 3081 (denial of motion to dismiss indictment on grounds of prosecutorial vin-

dictiveness); *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547 (denial of motion to dismiss on Sixth Amendment speedy trial grounds); *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962) (denial of preindictment motion to suppress evidence); *Parr v. United States,* 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1956) (dismissal of original indictment, permitting defendant to be reindicted in another district).

■ We conclude that the district court's order of commitment with respect to Gold satisfies the standards set in *Flanagan* for immediate appealability. The issue of Gold's competence to stand trial is entirely separate from the question of whether or not he sent the alleged communication. And although he may have available an insanity defense to the charges against him, and this defense would obviously involve his mental state, as does the matter of his competence to stand trial, the insanity defense and the matter of competence to stand trial are independent of one another because they involve Gold's mental states at different times and because the ultimate questions are different. Thus, an insanity defense would focus on Gold's mental state at the time of the sending of the alleged communication and on such questions as whether Gold was unable to appreciate the nature and quality or the wrongfulness of his conduct. *See* 18 U.S.C. § 20 (Supp. II 1984); *United States v. Tarrago,* 398 F.2d 621, 622–25 (2d Cir.1968) (en banc). By contrast, the matter of Gold's competence to stand trial focuses on his current mental state and on such questions as his comprehension of the charges and of the nature of the proceedings against him, and his ability to assist properly in the preparation of his defense. Accordingly, we regard the matter of Gold's competence to stand trial as collateral to the issues of his guilt or innocence of the charges against him.

Further, we have no doubt that the order of commitment has a sufficient degree of importance to warrant immediate review. Wholly apart from any interest in avoiding a delay in his trial, *compare United States*

*v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547 (speedy trial claim alone not appealable pretrial), the defendant has at stake a liberty interest, *cf. United States v. Klein,* 325 F.2d 283 (2d Cir.1963) (upholding appealability where institutionalization was ordered for an indefinite period and treating psychiatrist predicted that institutionalization might lead to suicide). If a defendant is not incompetent, he should not be confined in a psychiatric care facility.

As is true with respect to a right to pretrial release on bail, the liberty interest of the committed defendant is one as to which the "[r]elief ... must be speedy if it is to be effective." *Stack v. Boyle,* 342 U.S. at 4, 72 S.Ct. at 3. Unlike a ruling that the defendant *is* competent and *must* proceed to trial, which could be effectively reviewed and remedied, if erroneous, on appeal from any final judgment against him, an order finding that a defendant is not competent to stand trial and committing him for hospitalization would be effectively unreviewable on appeal from a final judgment. First, there may never be a criminal trial if the defendant is never found competent to stand trial; in this instance, there would be no appellate review. If the defendant eventually were found competent to stand trial and were acquitted, there again would be no appellate review. If the defendant were eventually found competent to stand trial and were convicted, the commitment order could be reviewed on appeal from his conviction; but the matter of the relief to be granted if the order were found to have been erroneous would be moot. Whether or not the conviction were set aside, nothing could recover for the defendant the time lost during his confinement; probably no one could be held liable to him in damages for the loss of his liberty.

Lastly, we view the present commitment order as one that is sufficiently final to warrant immediate appellate review. The order required that Gold be committed for a period of four months and provided for an "additional reasonable period of commitment" until either it is determined that there is a substantial probability that he will soon be competent to stand trial, or the pending charges against him are disposed of, whichever is earlier. Thus, the order on appeal made a factual finding that Gold was not currently competent to stand trial, and on that basis deprived him of his liberty for a period of at least four months. We regard this order as conclusively determining Gold's present right to be at liberty prior to trial.

We are aware that at least one federal court of appeals has held that a commitment order under a predecessor of the present statutory scheme is not final for purposes of appeal until the court not only has inquired into the defendant's competency and ordered confinement for a reasonable time to determine whether competency is likely to be attained, but also has found the defendant likely to be a long-term incompetent who is dangerous and in need of indefinite institutionalization. *See United States v. Cheama,* 730 F.2d 1383, 1386 (10th Cir.1984) (construing 18 U.S.C. §§ 4246 and 4247 (1982)). We disagree with the view that matters must proceed through the third step, *i.e.,* that of ordering the defendant's long-term commitment, before the defendant is allowed to appeal. While a first-step order that the defendant be evaluated in order for the court to make a finding under § 4241(d) as to his present mental competence to stand trial is not a final order, we conclude that an order at the second step, such as that entered here, finding that the defendant is not competent and committing him for a period of at least four months, is sufficiently final to be immediately appealable under the *Cohen* doctrine.

### The Merits

■ We have no difficulty with the merits of the order of commitment. The question of a defendant's competence to stand trial is one of fact, *Maggio v. Fulford,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (per curiam); *Matusiak v. Kelly,* 786 F.2d 536, 543 (2d Cir.1986), and the district court's finding as to competence may not be overturned unless it is clearly errone-

ous. Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer City, N.C.,* — U.S. —, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). The record amply supports Judge Sprizzo's finding that Gold was currently incompetent to stand trial, and any contention that that finding is clearly erroneous would be frivolous.

█ Since we see no nonfrivolous issues for review on this appeal, we grant the motion of Gold's attorney pursuant to *Anders v. California* to be relieved as appointed counsel. We deny Gold's motion for the appointment of new counsel on this appeal.

The order of commitment is affirmed.