UNITED STATES of America, Appellee,

v.

Mark Alan WEISSBERGER, Appellant.

No. 91–3181.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 1, 1991.

Decided Nov. 15, 1991.

Rehearing and Rehearing En Banc Denied Jan. 10, 1992.

Santha Sonenberg, Asst. Federal Public Defender, with whom A.J. Kramer, Federal Public Defender was on the memorandum, for appellant.

Ann K.H. Simon, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Asst. U.S. Atty., were on the brief, for appellee. Roy W. McLeese, III, Asst. U.S. Atty., also entered an appearance for appellee.

Before EDWARDS, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This is an appeal from a decision of the District Court requiring a 30–day competency examination and pretrial detention of appellant Mark Alan Weissberger. The appellant was arrested in the Dirksen Senate Office Building for carrying a fully-loaded .357 magnum revolver. The resulting search of his briefcase uncovered a batch of fanciful letters in which Weissberger identified himself as "World President." The letters revealed Weissberger's intention, as "World President," to order the arrest and imprisonment of a group of public figures, including President Bush, Vice President Quayle and Senator Paul Sarbanes. Subsequent investigation revealed that Weissberger may have been trying to get at Senator Sarbanes, who was scheduled to attend a meeting of the Joint Economics Committee on the day in question.

At a preliminary examination, the Magistrate Judge ordered Weissberger to undergo a 30–day competency evaluation as permitted by 18 U.S.C. §§ 4241(a), 4247(b) (1988) and denied bail. Appellant then requested the District Court to review the Magistrate Judge's orders. At a hearing before the District Court, appellant, with the assistance of counsel, argued that the Magistrate Judge exceeded her authority in ordering a competency evaluation, that the proceeding violated procedural due process and that there was no justification for the denial of bail. Following *de novo* review of the case, the Chief Judge of the District Court affirmed the orders requiring a 30–day competency evaluation and denying bail. This appeal followed.

Weissberger argues that he is competent to stand trial. He challenges the District Court's orders on three grounds: first, he claims that the Magistrate Judge was without authority to order a 30–day competency evaluation; second, he argues that, in any event, pursuant to procedural due process, a person in his position must be given a 24–hour screening examination before he can be subjected to the more intrusive 30–day competency evaluation; and, finally, he contends there is no basis for pretrial detention. The Government argues that this court lacks jurisdiction to hear the matter pertaining to the 30–day competency evaluation, because there is no appealable final order; the Government's principal argument, however, is that the judgments on review should be affirmed in all respects because there is no basis for overturning the orders of the District court.

The court finds that it has jurisdiction to hear appellant's challenges to the 30–day competency evaluation under the collateral order doctrine; on the merits, we affirm both the competency evaluation order and the decision denying bail.

## I. BACKGROUND

Sometime during the day of May 22, 1991, appellant Weissberger went to the office of U.S. Senator Paul Sarbanes. The purpose of his visit was to inquire whether Senator Sarbanes planned to attend a meeting of the Joint Economics Committee scheduled for later that day. It is not entirely clear why Weissberger wanted to know the whereabouts of Senator Sar-

banes. The record indicates, however, that Weissberger had been fired from a job at Voice of America, and he apparently held Senator Sarbanes responsible for his discharge.

Later during the day of May 22, Weissberger showed up in the Joint Economics Committee hearing room of the Dirksen Senate Office Building. After he was discovered to be carrying a fully-loaded .357 magnum revolver, Weissberger was arrested by the United States Capitol Police. Appellant was then charged with carrying a firearm into the Dirksen Office Building in violation of 40 U.S.C. § 193f(a)(1) (1988).

Upon arresting Weissberger, the Capitol Police searched his briefcase and found a series of letters signed by the appellant, in which he identified himself as the "World President." The letters revealed that, in his assumed capacity of World President, Weissberger "ordered" a group of individuals to be arrested and imprisoned in connection with "Watergate 2" and some related conspiracy that resulted in the expulsion of United States State Department personnel from the United States Embassy in Moscow. The letters indicated that the persons against whom action was to be taken included President Bush, Vice President Quayle, Javier Perez de Cuellar, Senator Paul Sarbanes, William Schaeffer, Ronald Reagan, Candice Bergen, Jimmy Smits and Jack Nicholson. According to one letter, because this "problem group" included President Bush, United States enforcement officers were refusing to execute the arrests; Weissberger therefore wrote to Ambassador Dubinin of the Soviet Union, requesting the assistance of INTERPOL to carry out the arrests of the named individuals.

At a preliminary hearing held on May 28, 1991, the Magistrate Judge denied bail and, finding that there was a question as to Weissberger's competency to stand trial, ordered a 30–day competency evaluation. Weissberger, claiming that he was competent, sought review by the District Court pursuant to 28 U.S.C. § 636(b)(1) (1988). The Chief Judge conducted a *de novo* review of the evidence, after which he found that a 30–day competency examination was warranted because there was reasonable cause to believe that Weissberger might be incompetent to stand trial; the Chief Judge also denied bail because he found that the appellant was a threat to the community.

## II. ANALYSIS

Weissberger now appeals the competency evaluation order on the grounds that the Magistrate Judge exceeded her authority in ordering it *sua sponte* and that the Order violated procedural due process. Further, Weissberger appeals the pretrial detention. Before turning to appellant's claims, however, we first address the issue raised by the Government, *i.e.*, whether this court has jurisdiction to hear the competency evaluation appeal.

### A. *Appealability*

■ Under federal law, an individual cannot be prosecuted on criminal charges unless he is "competent" to stand trial. Generally, a defendant is considered to be incompetent if he is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a) (1988).

■ There is a three-stage statutory process pursuant to which competency determinations are made. 18 U.S.C. § 4241 (1988). At the first stage of the competency determination process, a court may order a competency evaluation committing a defendant for a period not exceeding 30–days if the court has "reasonable cause" to believe that the individual may be incompetent to stand trial. 18 U.S.C. § 4241(a). There is no precise definition of "reasonable cause"; however, the Supreme Court has held that any significant doubt as to the defendant's competency requires a competency evaluation. *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (1966) (where evidence raises a *bona fide* doubt as to defendant's competency, an evaluation must be held); *see also United States v. Crosby*, 739 F.2d 1542, 1546 (11th Cir.), *cert. denied*, 469 U.S. 1076, 105 S.Ct. 576, 83 L.Ed.2d 515 (1984) (test is whether there is reasonable

cause to believe that the defendant *"might be* incompetent to proceed," not whether the defendant *is* incompetent). The information produced by the evaluation is presented at an adversarial hearing at which the judge determines whether a preponderance of the evidence indicates that the defendant is incompetent. 18 U.S.C. § 4241(a), (d) (1988).

At the second stage of the competency determination process, upon a finding of incompetency, the court may commit the defendant for a "reasonable time, not to exceed four months ... to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." 18 U.S.C. § 4241(d) (1988). Finally, at the third stage of the process, which comes at the end of the second confinement, another hearing is held to determine if the defendant is a long-term incompetent and sufficiently dangerous to require indefinite institutionalization. *Id.* at §§ 4241(d), 4246 (1988).

■ This case involves an appeal from a judicial determination requiring confinement and psychiatric evaluation at the first stage of the statutory process. The Government claims that there can be no review of this determination because it does not involve a "final order" from which an appeal can be taken under 28 U.S.C. § 1291 (1988). *See Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 1053, 79 L.Ed.2d 288 (1984) (in a criminal case, conviction and sentencing constitute a "final decision"). It is true that the competency evaluation order is not a "final order" in the traditional sense in which that term is used; it is nonetheless reviewable under the so-called "collateral order" doctrine, just as is the decision denying bail. *See Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951) (an order denying bail is immediately appealable).

In *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), the Supreme Court upheld the immediate appeal of orders that might otherwise be viewed as non-final, so long as three conditions are met: the order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). It is pursuant to this "collateral order" rule that appellant may seek review of the competency evaluation order in this case.

The District Court's decision, to hold Weissberger in confinement for up to thirty days to undergo an involuntary psychiatric examination, easily satisfies the *Cohen* test for appealability as a collateral order. First, the order conclusively determines that there is an issue as to Weissberger's competency. In fact, the order so conclusively determines this issue that it causes Weissberger to be confined for up to thirty days in a mental hospital and subjected to an intrusive, unwanted medical examination. Second, the commitment order is completely independent of the question of innocence or guilt on the underlying felony. Third, this loss of liberty, which Weissberger seeks to avoid, would be complete and effectively unreviewable by the time of final judgment.

As noted above, an appeal from a competency evaluation order is analogous to an appeal from a denial of bail. If appeal is not allowed from an order requiring pretrial detention, there can be no remedy for the resulting loss of liberty. *Flanagan*, 465 U.S. at 266, 104 S.Ct. at 1055; *Stack*, 342 U.S. at 12, 72 S.Ct. at 7 (Jackson, J., concurring) ("unless [bail] can be reviewed before sentence, it never can be reviewed at all"). The issue becomes moot upon conviction and sentence. The same is true here. Not only would Weissberger be subjected to a 30–day confinement in a mental institution, but he also would be subjected to the additional intrusion of a forced medical examination. If he is declared competent and the trial proceeds, post-confinement review will provide no relief for the

loss of liberty associated with the competency evaluation.[1]

In short, under *Cohen,* we are obliged to consider appellant's appeal. As in the case of pretrial detention, an appellant cannot be left without recourse to appellate review in a situation where he faces an immediate and significant loss of personal liberty.[2] In acting at the first stage of the competency determination process, the trial court is required to consider whether there is "reasonable cause" to believe that the appellant might be incompetent to stand trial; this standard is no less susceptible to review than is the "dangerousness" standard applicable to denial of bail under 18 U.S.C. § 3142(e) (1988). Indeed, the Government suggests no meaningful distinction between the competency evaluation order and denial of bail on the issue of appealability.

At oral argument, the Government expressed concern that permitting appeal at this point in the competency evaluation process might open the floodgates to appeals of this type and increase the burden on the court. This is a specious argument. For one thing, we can no more deny appeal on this ground than we could in cases challenging the denial of bail. If the matter in dispute satisfies the *Cohen* test, we must hear it, especially in a case of this sort where what is at stake is a significant loss of personal liberty. Furthermore, the "floodgates" argument raises a bogus issue, because most decisions under 18 U.S.C. § 4241 do not raise appealable issues. Normally, a defendant seeks to *avoid standing trial* due to a claim of incompetence, so 30–day competency evaluations usually are sought, not resisted. It is a rare case, indeed, when a competency evaluation is ordered over the objection of a defendant. Finally, this court is fully able to consider expedited appeals of competency evaluation orders pursuant to review by Special Panels, just as is done with appeals challenging pretrial detention. *See* D.C.Cir.R. 8(a); D.C.Cir. Handbook of Practice and Internal Procedures VII(E); VIII(A) (1987).

For all of the foregoing reasons, we find that Weissberger's challenge to the competency evaluation order raises an appealable issue.

---

1. *See United States v. Gold,* 790 F.2d 235, 239 (2d Cir.1986), where, in upholding the appealability of an order issued at the second stage of the competency determination process, the court noted that,

> Unlike a ruling that the defendant *is* competent and *must* proceed to trial, which could be effectively reviewed and remedied, if erroneous, on appeal from any final judgment against him, an order finding that a defendant is not competent to stand trial and committing him for hospitalization would be effectively unreviewable on appeal from a final judgment. First, there may never be a criminal trial if the defendant is never found competent to stand trial; in this instance, there would be no appellate review. If the defendant eventually were found competent to stand trial and were acquitted, there again would be no appellate review. If the defendant were eventually found competent to stand trial and were convicted, the commitment order could be reviewed on appeal from his conviction; but the matter of the relief to be granted if the order were found to have been erroneous would be moot. Whether or not the conviction were set aside, nothing could recover for the defendant the time lost during his confinement; probably no one could be held liable to him in damages for the loss of his liberty.

*Id.* The same problems are applicable here with respect to review of first-stage orders.

2. In *Gold, supra* note 1, the Second Circuit addressed the question whether an individual could appeal an order issued at the *second stage* of the competency determination process. In deciding that appeal was appropriate, the court focused on the fact that the order "deprived [Gold] of his liberty for a period of up to four months" and "conclusively determined Gold's present right to be at liberty prior to trial." 790 F.2d at 239. We believe that this rationale supports a finding of reviewability of an order requiring confinement and a competency evaluation at the first stage of the process, as well. In dicta, the Second Circuit noted that a first-stage order was not "final," *id.,* but it did not have occasion to decide whether such an order might be appealable under the collateral order doctrine.

Further, we join the Second Circuit in rejecting the Tenth Circuit's holding that no appeal is available until a third-step order declaring the defendant to be a long-term incompetent in need of indefinite institutionalization has been entered. *Id.; see also United States v. Cheama,* 730 F.2d 1383, 1386 (10th Cir.1984) (discussing the predecessor to the present statutory scheme, 18 U.S.C. §§ 4244–48 (1982)). The Tenth Circuit's view appears to be flatly at odds with the dictates of *Cohen.*

## B. *The Merits*

### 1. The Magistrate Judge's Authority

■ Weissberger contends, and we agree, that the Magistrate Judge exceeded her authority in ordering the competency evaluation without first receiving a request to do so from a District Judge as required by Local Rule 501.[3] This error does not invalidate the competency evaluation order, however. As required by 28 U.S.C. § 636(b)(1) (1988), a District Court judge (in this case, the Chief Judge) reviewed the order *de novo* when the defendant opposed it.[4] At the reconsideration hearing, the Chief Judge made findings based upon his independent review of the entire record. This *de novo* review cured any arguable defect in the original order.[5]

### 2. Procedural Due Process Claim

Weissberger argues that a 24–hour psychiatric "screening" examination *always* must be utilized before a defendant can be forced to undergo a more intrusive 30–day psychiatric examination. He contends that the failure to use such a screening procedure, followed by an adversary hearing, violates procedural due process.

■ We reject the suggestion that a psychiatric screening procedure is a necessary precondition to the 30–day competency evaluation. The statute does not impose such a requirement and we have no basis upon which to compel it. The critical question in any case of this sort is whether the

District Court has enough information before it to satisfy the "reasonable cause" standard of 18 U.S.C. § 4241(a). Although there may be instances in which a psychiatric screening is appropriate, the facts of this case do not require it.

■ We also can find no constitutional infirmity in the evaluation process prescribed by 18 U.S.C. §§ 4241(a), (b), 4247(b). To determine whether procedural due process is violated, the court must consider the private interest at stake, the risk of erroneous deprivation of that interest, and the government's interest including any fiscal and administrative burdens. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). This case pits Weissberger's liberty interest against the Government's interest in ensuring that he is competent for trial and in avoiding the costs of duplicative and unnecessary processes. Both the appellant and the Government have strong and valid interests in this case. We therefore resolve the question of whether procedural due process was violated by reference to the second prong of *Mathews*.

■ Under the first stage of the statutory process, the court may order a 30–day competency evaluation "if there is reasonable cause to believe that the defendant may be" incompetent to stand trial. 18 U.S.C. § 4241(a), (b) (1988). There is no formal hearing required as a precondition to the competency evaluation, most likely because Congress assumed that most such inquiries will be initiated by defendants

---

**3.** Local Rule 501 states, in pertinent part:
    [A]t the request of a judge to whom the case is assigned, a Magistrate shall have the duty and power to: ...
    (9) Hear motions and enter orders for examinations to determine mental competency in criminal cases.
D.D.C.R. 501(b)(9).

**4.** The Chief Judge noted that it was the practice of the court to "assign by inference" to the Magistrate Judge the decision whether to order a competency evaluation. If this is indeed the practice, the trial court might well consider revising its rules to permit Magistrate Judges to conduct competency hearings and to order competency evaluations, both at the request of a District Judge and *sua sponte*. Such a revision will help to avoid any future confusion over the Magistrate Judge's authority.

**5.** The savings clause of Rule 501(a)(14) provides that a Magistrate Judge may "[p]erform any additional duty not inconsistent with the Constitution and laws of the United States." We construe this rule to authorize a Magistrate Judge to receive evidence even when she is not empowered to enter the competency evaluation order. D.D.C.R. 501(a)(14). Such a construction is not at odds with the literal terms of Rule 501(b)(9). Based upon this construction, we conclude that the Chief Judge did not err in basing his findings in part on evidence that had been submitted during the hearing before the Magistrate Judge. *Cf. National R.R. Passenger Corp. v. Koch Indus.*, 701 F.2d 108, 111 (10th Cir.1983) (*de novo* review does not mean that District Judge must rehear evidence).

who are seeking to avoid trial. There is nothing in the statute, however, that forecloses a hearing prior to the issuance of a 30-day competency examination order under 18 U.S.C. §§ 4241(b), 4247(b). Indeed, as occurred in this case, we assume that the District Court *always* will provide for a hearing in a situation in which either the Government, or the court *sua sponte*, moves for consideration of competency over the objection of the defendant.

■ In this case, the appellant's position was presented, with assistance of counsel, both before the Magistrate Judge and the Chief Judge. And, as the record clearly shows, the two hearings that were provided made the risk of erroneous deprivation minimal. Weissberger's behavior on May 22, the fanciful letters found in his briefcase and the testimony at the preliminary hearing were considered by both a Magistrate Judge and a District Judge. The evidence provided an irrefutable basis supporting the determination that a 30-day competency evaluation was warranted.

### 3. Bail

■ We affirm the District Court's pretrial detention order. The trial court's determination whether to deny bail on the grounds that the defendant poses a threat to the safety of the community must be upheld unless clearly erroneous. *United States v. Simpkins*, 826 F.2d 94, 96 (D.C.Cir.1987). Weissberger, an individual of questionable competency, was arrested with a fully-loaded .357 magnum revolver at a time when he was looking for a United States Senator against whom he appeared to harbor a grudge. Given these facts, we can hardly conclude that the District Court was clearly erroneous in finding that Weissberger posed a threat to the community.

### III. CONCLUSION

The judgment of the District Court is affirmed, both as to the 30-day competency order and the denial of bail.

*So ordered.*