

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-30-2008

# USA v. Hansen

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3342

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Hansen" (2008). *2008 Decisions.* Paper 1101.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1101

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3342
_____

UNITED STATES OF AMERICA

v.

ALICIA HANSEN,

Appellant

_____

Appeal from the Order of the District Court
of the Virgin Islands
(Crim. No. 07-cr-00023)
District Judge: Honorable James T. Giles
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 6, 2008
_____

Before: RENDELL, FUENTES, and CHAGARES, Circuit Judges.


(Filed: May 30, 2008 )


_____


OPINION

_____

FUENTES, Circuit Judge:

Alicia Hansen, formerly a Virgin Islands Senator, appeals the denial of her motion to dismiss two counts of an indictment, both alleging perjury. In particular, Hansen argues that the allegedly untruthful statements underlying counts 3 and 5 of the indictment were necessarily found to be truthful by a jury in an earlier trial, and the Double Jeopardy Clause bars a second prosecution based on those statements. Because we conclude that the present prosecution involves different issues than those addressed in the prior trial, we will affirm.

## I.

## A.

In a previous trial, Hansen was acquitted of a charge that she had financial interests conflicting with her job as a Virgin Islands Senator, in violation of sections 1102 and 1103 of title 3 of the Virgin Islands Code.[1] This charge alleged that Hansen requested from the legislature and obtained a contract ("GRM Contract") paying $25,000 to a private company, GRM, "because GRM planned to make a $1000 contribution to Alicia Hansen's campaign and because GRM employed Esdel Hansen, the husband of

---

[1]Section 1102 provides that "[n]o territorial officer or employee shall . . . have any interest . . . or [be] engaged in any business or transaction or professional activity . . . , which is in substantial conflict with the proper discharge of his duties in the public interest and of his responsibilities as prescribed in the laws of the Virgin Islands." 3 V.I. Code tit. 3, § 1102. Section 1103 states that a person has a "substantial conflict" if he "will derive a direct monetary gain or suffer a direct monetary loss, as the case may be, by reason of his official activity." Id. § 1103.

Alicia Hansen."  App. 22.

During the trial, the government tried to show that Hansen did not intend for the GRM Contract to cover any actual services.  The government introduced a February 21, 2002, "request for legislative contract" ("February Request") forwarded from Hansen's office to the legislature.  The February Request indicated that the GRM Contract was for consultation services rendered from February 2002 through December 2002 regarding a bill before the Virgin Islands Senate, the "Tech Park" bill.  However, the Tech Park bill was signed on January 31, 2002 which, according to the government's theory, showed that the $25,000 was intended to be a windfall.  The February Request was prepared and signed by Hansen's assistant, who testified that she always obeyed written office rules requiring that Hansen approve every document leaving the office.

Count 3 of the present indictment asserts that Hansen's trial testimony regarding the office rules was material and knowingly false:

> Q:      Isn't it true, ma'am, that you had a set of rules, office rules, for your employees?
>
> A:      No. I can't recall having a set of rules for my employees.  They know what the rules were.
>
> [Hansen is confronted with a copy of office rules]
>
> Q:      Do you recognize the document in your hands as a form of document that you used with regard to managing the employees in your office?
>
> A:      No.

See App. 15-16.

In order to rebut the adverse implications of the February Request, Hansen attempted to show that the February Request was inaccurate, and that the GRM Contract was intended to, and did, cover actual services rendered prior to the Tech Park bill's passage on January 31, 2002. In this vein, Hansen introduced a different draft request for legislative contract for GRM's services that was dated January 22, 2002 ("January Request"). The January Request was never submitted to the legislature but, contrary to the February Request, indicated that the GRM Contract was for consultation services provided from September 2001 through January 2002.

In addition, Hansen testified that an amendment to the Tech Park bill drafted by GRM was in her possession on January 31, 2002, the date the Tech Park bill was signed:

> Q: When the bill was up for a vote on January 30, 2002, isn't it true that you did not have a draft amendment purportedly drafted by GRM?
>
> A: Of course I had it. Sure.

App. 117. Count 5 of the present indictment alleges that her trial testimony contradicted the following grand jury testimony, such that one of the declarations was necessarily false:

> A: Okay, the same night I explained what happened, [January 30, 2002,] and the bill was about to pass without the amendment, the guarantee. They were calling. A voice said where is the amendment, and I said, well, it's not here.

App. 97-98.

After trial, the jury acquitted Hansen of the conflict of interest charge in a general verdict.

**B.**

On May 3, 2007, a grand jury returned a new indictment against Hansen for five counts of perjury in violation of 18 U.S.C. §§ 1621 and 1623.[2] Hansen moved to dismiss all of the charges, arguing, among other things, that the Double Jeopardy Clause barred the prosecution. The District Court denied the motion. On appeal, Hansen only challenges the denial of her motion to dismiss counts 3 and 5.

---

[2]18 U.S.C. § 1621 states:
Whoever– (1) having taken an oath before a competent tribunal . . . in any case in which a law of the United States authorizes an oath to be administered, that he will testify . . . truly . . . , willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury . . . .

18 U.S.C. § 1623 states:
(a) Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . , shall be fined under this title or imprisoned not more than five years, or both.
(b) This section is applicable whether the conduct occurred within or without the United States.
(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if--
(1) each declaration was material to the point in question, and
(2) each declaration was made within the period of the statute of limitations for the offense charged under this section. . . .

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231 because the case involved offenses against the laws of the United States. Although the District Court has not decided guilt or innocence on counts 3 and 5, "[o]rders denying motions to dismiss an indictment on double jeopardy . . . grounds are . . . immediately appealable. Such orders finally resolve issues that are separate from guilt or innocence, and appellate review must occur before trial to be fully effective." Flanagan v. United States, 465 U.S. 259, 266 (1984). Therefore, this Court has jurisdiction pursuant to 18 U.S.C. § 1291. See United States v. Smith, 82 F.3d 1261, 1265 (3d Cir. 1996).

We exercise plenary review over challenges based on the Double Jeopardy Clause, including those based on issue preclusion. Id. at 1265-66.

## III.

The Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." In order to determine whether the Double Jeopardy Clause bars this action, the Court first must decide whether Hansen is being prosecuted for the same offense twice. The test for identity of offenses is whether each separate statutory provision requires proof of an additional fact which the other does not. See Blockberger v. United States, 284 U.S. 299, 303-04 (1932); United States v. Conley, 37 F.3d 970, 975 (3d Cir. 1994). Applying this test, there is no question that the Double Jeopardy Clause does not prevent prosecution for perjury because of a prior

-6-

prosecution for conflict of interest—the elements of the two offenses as defined in the statutes are completely different.

However, even if two offenses are sufficiently different to permit the imposition of consecutive sentences under the Double Jeopardy Clause, successive prosecutions will be barred where the second prosecution requires the relitigation of issues of ultimate fact already resolved by the first. Ashe v. Swenson, 397 U.S. 436, 444-45 (1970). Where a previous judgment of acquittal was based on a general verdict, such as Hansen's, this Court must determine whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration because of issue preclusion. Id. Of course, if the issues in the second action are dissimilar from those in the first, the doctrine does not apply.

The District Court concluded that the jury in the conflict of interest case could have based its judgment on other grounds, besides the truth of Hansen's statements, and therefore collateral estoppel does not apply. We agree.

Count 3 of the present indictment charges Hansen with committing perjury when she denied the existence of written office rules. Hansen argues that when the jury returned a verdict of acquittal, it necessarily "reject[ed her assistant's] testimony that she always followed office rules." Appellant Br. 12-13. Assuming the truth of Hansen's argument, it still does not preclude the present prosecution, which presents a different issue than the issue allegedly resolved by the jury in the earlier case. Whether Hansen's

assistant followed office rules is a different issue than whether office rules existed, rendering issue preclusion inapplicable.

Meanwhile, count 5 alleges that there is an irreconcilable contradiction between Hansen's trial and grand jury testimony. Hansen never attempts to resolve this contradiction, yet argues that "[i]f the jury had concluded that appellant Hansen . . . gave false testimony to the Grand Jury on February 19, 2004, or [to the trial jury on September 13, 2006], then as a matter of law it would have returned a guilty verdict." Appellant Br. 14. In other words, Hansen argues that the jury must have credited both Hansen's testimony that she did not possess the amendment on January 31, 2002, and her testimony that she did possess the amendment, otherwise it would not have acquitted. This argument is unpersuasive. If the jury credited Hansen's trial testimony and discredited her grand jury testimony, that would support both an acquittal on the conflict of injury charge as well as the present indictment for perjury.

Finally, as regards each count, even if the jury discredited Hansen's statement regarding the absence of office rules and discredited one or both of Hansen's contradictory statements regarding the amendment, there is still an alternate ground upon which the jury could have based its verdict. Namely, the jury could have found that the existence of the January Request created a reasonable doubt as to Hansen's guilt.

For the foregoing reasons, we conclude that a rational jury could have grounded the verdict of acquittal on issues other than the truthfulness of the statements underlying

-8-

counts 3 and 5, and issue preclusion does not apply.  See Ashe, 397 U.S. at 444-45.

## IV.

Because the Double Jeopardy Clause does not bar prosecution of counts 3 and 5, we will affirm the decision of the District Court.