**UNITED STATES of America**

v.

**Juan Garcia MARTEL and
Jose Luis Solis.**

**Criminal No. 96–0683.**

United States District Court,
D. New Jersey.

March 27, 1997.

Faith S. Hochberg, U.S. Attorney, Henry E. Klingeman, George Leone, Assistant U.S. Attorneys, U.S. Department of Justice, Newark, NJ, for the U.S.

Richard J. Coughlin, Federal Public Defender for the District of New Jersey, Camden, NJ, for Defendant, José Luis Solis.

Michael A. Robbins, Newark, NJ, for Defendant, Juan Garcia Martel.

H. Wayne Bettis, J. Brent Liedtke, Houston, TX.

## OPINION

ORLOFSKY, District Judge:

This criminal matter requires this court to determine whether the representation of these two co-defendants by their chosen counsel, two attorneys who propose to represent each defendant jointly, raises actual or serious potential conflicts of interest, and, if so, whether the defendants may waive any such conflict of interest. These questions compel this court to examine the perils of joint representation in light of Rule 44(c) of the Federal Rules of Criminal Procedure, and the cases which have interpreted it.

For the reasons set forth below, I conclude that the multiple representation proposed in

this case raises serious potential conflicts of interest. Furthermore, based upon the defendants' responses to the court's questions at a hearing conducted to inquire into these potential conflicts, I find that the defendants have not knowingly, intelligently and voluntarily elected to waive their Sixth Amendment right to conflict-free representation. Finally, I harbor grave doubts whether a district court should accept even a knowing, intelligent and voluntarily waiver in the face of the potential conflicts of interest presented by the unique facts and circumstances of this case.

## I. Facts and Procedural History

On November 7, 1996, defendants, Juan Garcia Martel ("Garcia") and José Solis ("Solis") were arrested by New Jersey State Police detectives at a gas station in Jersey City, New Jersey. Solis was approached at the scene by Detective James E. Price who asked for and obtained Solis's permission to search the van he was driving, which bore Texas license plates. Several adults and minors were found in the van.

State Police detectives subsequently contacted the Immigration and Naturalization Service ("INS"). INS agents detained Garcia and Solis, along with the occupants of the van, all of whom were determined to be illegal aliens. On November 14, 1996, defendants were indicted on one count of conspiracy to transport illegal aliens within the United States in violation of 18 U.S.C. § 371, and one count of transporting illegal aliens within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 18 U.S.C. § 2.

Defendants originally testified that they were indigent, and counsel were appointed by the court to represent each defendant. Richard J. Coughlin, Esq., the Federal Public Defender for the District of New Jersey was appointed to represent Solis, and Michael A. Robbins, Esq., was appointed to represent Garcia. Initially, Garcia expressed his willingness to enter a plea of guilty pursuant to a plea bargain negotiated by his counsel with the United States Attorney. Some days before Garcia was to enter his plea, however, he indicated that he wished to

be represented by other counsel and would stand trial.

Attorneys, H. Wayne Bettis, Esq., and Brent Liedtke, Esq., both members of the Bar of the Supreme Court of Texas, have applied for permission to represent José Luis Solis and Juan Garcia Martel in this matter. On February 21, 1997, the court conducted a hearing with all counsel and both defendants present, and inquired of each defendant, whom he desired to have represent him in this matter. Solis chose to be represented by Mr. Bettis, and Garcia chose to be represented by Mr. Liedtke. The court then ordered Mr. Bettis and Mr. Liedtke to brief the issue of whether this representation would be "joint representation" within the meaning of Fed.R.Crim.P. 44(c), and, if so, whether a conflict of interest would arise from the joint representation.

In view of the fact that Mr. Liedtke, who is a sole practitioner, and Mr. Bettis, who is associated with the law firm of B.J. Hooks, represented that they had worked together on several prior cases, the court directed Mr. Bettis and Mr. Liedtke to address the factors set forth in *United States v. Stalks,* 1994 WL 606060 (D.N.J. Nov.1, 1994), which analyzes the question whether attorneys who are not formally affiliated in a single firm, may nonetheless be considered to be jointly representing two or more clients.

In response, attorneys Bettis and Liedtke, filed essentially identical affidavits, in which they listed a number of cases in the state courts of Texas in which they are currently involved as co-counsel. In their affidavits, Mr. Bettis and Mr. Liedtke unequivocally expressed their intention to represent Garcia and Solis jointly. The affidavits further set forth their belief that no conflict of interest would arise in the joint representation because "[b]oth defendants have consistent defenses." Affidavit of J. Brent Liedtke at 3.

In response to the court's Order of February 21, 1997, the Government filed a Motion For an Inquiry Into Potential Conflict of Interest pursuant to Fed.R.Crim.P. 44(c), and a brief, outlining what the Government viewed as the potential areas of conflict arising from the proposed joint representation of Garcia and Solis by Messrs. Bettis and

Liedtke. On March 21, 1997, the court held a hearing to address the potential conflicts of interest raised by the Government's motion and to determine: (1) whether, if any potential conflicts existed, Garcia and Solis were willing to waive any conflicts of interest in order to be jointly represented by Mr. Bettis and Mr. Liedtke; and (2) whether a waiver of any such conflict could be accepted by the court consistent with Fed.R.Crim.P. 44(c) and the cases construing it.

At the March 21, 1997, hearing, the court initially observed that it was no longer necessary to decide the question whether Mr. Bettis and Mr. Liedtke were actually associated in the practice of law in view of their affidavit testimony that their representation of Garcia and Solis should be considered "joint representation." Transcript of Mar. 21, 1997 (hereinafter "Tr.") at 5. Accordingly, the court need not address the issues raised in *Stalks*, and will proceed directly to an analysis of the factors governing joint representation of criminal defendants under Rule 44(c).

## II. Standards Governing Joint Representation

·Rule 44(c) of the Federal Rules of Criminal Procedure provides, in pertinent part:

> Whenever two or more defendants ... are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Fed.R.Crim.P. 44(c).

■ The right to the assistance of counsel of one's choice in a criminal prosecution is guaranteed by the Sixth Amendment to the Constitution. The right, however, is not absolute. "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexora-

bly be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). To this end, although a criminal defendant's choice of counsel enjoys a heavy presumption in its favor, this Sixth Amendment right must be balanced against the court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160, 108 S.Ct. at 1698.

Although a criminal defendant may waive a conflict of interest, it is not always a simple matter for counsel or the court to inform a defendant of all possible conflicts of interest so that the defendant's waiver of the right to independent, conflict-free counsel is both knowing and voluntary. As the Supreme Court has noted, "a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* at 162, 108 S.Ct. at 1699.

■ For this reason, the Supreme Court has made it clear that a trial court need not accept a defendant's waiver of a conflict of interest. "[T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat,* 486 U.S. at 163, 108 S.Ct. at 1699.

## III. Discussion

This case presents a number of potential conflicts of interest arising out of the proposed joint representation of both defendants by Messrs. Bettis and Liedtke, which are both serious and troubling. Although the Supreme Court has allowed district courts "substantial latitude" in deciding whether to accept a criminal defendant's waiver of the Sixth Amendment right to conflict-free assistance of counsel, the fact that a Rule 44(c)

hearing will almost uniformly take place in the early stages of a criminal proceeding, before the factual record is well developed, has meant that the cases decided since *Wheat* do not set forth a clear framework in which to make this important decision. As one district court aptly noted:

> [I]t appears that Rule 44(c) and the cases cited offer scant guidance for district courts in the exercise of the wide discretion *Wheat* affords, beyond directing that they apply a presumption in favor of counsel of choice and permitting but not requiring them to accept waivers of actual conflict unless to do so would seriously compromise the integrity of the judicial process. These authorities define no easily articulated rule, and appear to require not only the weighing of interests neither precisely measurable nor easily compared (positively weighted value of defendants' choice balanced against integrity of the judicial process), but also the evaluation of relationships that are not now clear (how one defendant's interests compare with another's) and an augury of a future that cannot be certain (whether defendants will testify at trial and if so whether they will incriminate one another, whether cross-examination of a government witness will be aided by confidential information received from one defendant that would help another but perhaps injure the defendant who provided the information).

*United States v. Rahman,* 837 F.Supp. 64, 70 (S.D.N.Y.1993) (internal citations omitted). The following discussion illuminates the areas of potential conflict which emerged during the March 21, 1997, hearing.

### A. The Employment of Bettis and Liedtke by Adrian Garcia

After their arrest, Garcia and Solis declared their indigency and were appointed separate defense counsel. The court has not been notified of any change in defendants' status as indigents. Attorneys, Bettis and Liedtke, in their affidavits, stated that they were retained on behalf of Garcia and Solis by "family members." *See, e.g.,* Affidavit of J. Brent Liedtke at 4. Furthermore the affidavits state that B.J. Hooks, the law firm which employs H. Wayne Bettis, had represented "this family in other unrelated legal matters." *Id.*

At the March 21, 1997, hearing, however, it developed that Adrian Garcia, who is the brother of defendant, Juan Garcia, and the brother-in-law of defendant, Solis, had retained Messrs. Bettis and Liedtke to represent the defendants in this matter. Adrian Garcia is also a principal of Eben-ezer Van Tours, the owner of the van which defendants were driving at the time of their arrest. According to the Government's brief in support of its motion for a Rule 44(c) hearing, Adrian Garcia is an unindicted co-conspirator in this action.[1] It was established at the March 21, 1997, hearing, that Adrian Garcia retained B.J. Hooks, Esq., with whom Mr. Bettis is associated and from whom Mr. Liedtke rents office space, to attempt to recover possession of the van which was driven by Garcia and Solis and seized by the Government. This was the only prior representation of Adrian Garcia, or his company, Eben-ezer Van Tours, by anyone connected with this case. Tr. at 18–19, 68–69.

In post-arrest statements taken by agents of the INS, the accuracy and validity of which is vigorously challenged by Messrs. Bettis and Liedtke, both defendants implicated Eben-ezer Van Tours in an on-going conspiracy to transport illegal aliens. At the March 21, 1997 hearing, the court expressed its concern that, if these statements are ultimately admitted into evidence at trial, Mr. Bettis and/or Mr. Liedtke may be unable to exploit the possible role of Adrian Garcia in this matter to the advantage of Garcia and Solis. The following colloquy ensued:

> THE COURT:.... My question is are you in a position to cast blame upon Adrian Garcia as opposed to your client when Adrian Garcia is paying your fees?
>
> MR. LIEDTKE: Am I, am I in a position to do that?
>
> THE COURT: Yes.

---

1. As noted by the court, Adrian Garcia is not actually named in the body of the indictment. Tr. of Mar. 21, 1997 at 8. There is no doubt that Adrian Garcia has potential criminal exposure from this incident.

MR. LIEDTKE: No, I'm not, obviously not.

THE COURT: Isn't that a problem?

MR. LIEDTKE: Well, that is potentially a problem in general. With the specifics of this case, your Honor, no, that's not a problem because we're not—the defense in this case, your Honor, is that there was no crime committed. If there is no crime committed, then there is no blame to be cast upon any unindicted coconspirator or indicted coconspirator. There is nothing that these two individuals can say further in their testimony that could further implicate Adrian Garcia. It's our defense in the case that transportation of illegal aliens may be bad, but it's not a crime against the United States of America unless you meet all those four elements.

THE COURT: Are you telling me that if Adrian Garcia were not paying your fees that you would not attempt as part of your defense strategy to try and cast some blame upon Adrian Garcia?

MR. LIEDTKE: No, I think that would be an untenable defense whether he's paying my fee or not.

Tr. at 23–24.

The court then posed the following hypothetical to Mr. Liedtke. If the Government offered leniency to either Garcia or Solis, or both, in exchange for testimony against Adrian Garcia, could Mr. Liedtke negotiate with the Government and independently advise his clients with respect to those negotiations,[2] in view of the fact that Adrian Garcia is paying his fees? Mr. Liedtke responded:

Absolutely. And we had to address that issue with both defendants before we even accepted representation. The fact is, your Honor, that Adrian Garcia is married to José Solis' wife and this court has allowed José Solis to be free on bond because his brother is going to be responsible for him and his brother is acting as investigator for the defense team[3] and Juan Garcia is Adrian Garcia's brother. It's all family. So, when we—before we initiated even stepping into a plane to come to New Jersey, we asked them, we had to ask them is there a possibility of testifying against each other? And they said no.

Tr. at 25. However, the relationship between these two defendants and the other "family members" who have retained counsel for them, while suggesting one reason they might decide to present a united front, also suggests that the defendants may not fully appreciate the important rights which are protected by separate counsel. As then District Judge, now Circuit Judge Roth, pointed out in similar circumstances:

[b]ecause defendants are family members, they may not be acting out of self-interest in choosing joint representation, but rather out of an interest to protect the family as a unit. However, each defendant is individually entitled to effective counsel and protection of this right is paramount to a family's desire to defend themselves as a unit.

*United States v. Cooper,* 672 F.Supp. 155, 159 (D.Del.1987) (Roth, J.). When viewed from this perspective, it is particularly troubling that Juan Garcia has apparently been living illegally in this country with the assistance and support of his older brother Adrian. Tr. at 64. Beyond the natural desire to acquiesce in an older brother's decision as to what course of action will best preserve the family's interests, Juan Garcia may feel indebted to Adrian for the care and support he has received at his hands. The significance of this concern is not mitigated by Mr. Bettis's assurance that "[a]t no time did Mr. [Adrian] Garcia ask Mr. Liedtke and myself to represent his interests." The knowledge that his older brother is paying for his defense may, in and of itself, prevent Juan Garcia from considering a defense strategy that would inculpate Adrian Garcia.

**2.** The prospect of an offer of leniency by the Government in return for a defendant's cooperation is a fertile source of conflict in any joint representation. *See United States v. Flanagan,* 679 F.2d 1072, 1074 (3d Cir.1982), *rev'd on other grounds,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984).

**3.** José Solis's brother, Ernesto Solis, a sheriff's deputy in Harris County, Texas, is apparently acting as a private investigator on behalf of the defense in this matter. Government's Brief at 5.

## B. Plea Negotiations

■ In their affidavits, Mr. Bettis and Mr. Liedtke stated that neither the defendants, nor "the other family members" wanted either Garcia or Solis to enter into a plea agreement with the Government. Affidavit of J. Brent Liedtke at 3–4; Affidavit of H. Wayne Bettis at 4. Both defendants were offered plea agreements which, according to the Government, "likely would have resulted in non-custodial sentences." Government's Brief at 14. Before Mr. Bettis and Mr. Liedtke undertook the representation of defendants, Garcia had agreed to enter into such an agreement, although Solis had not.

Because he is a citizen, Solis faces the loss of important civil rights, if he is convicted or adjudged guilty by reason of a plea. By contrast, Garcia, because he is an illegal alien, will almost certainly be deported at the conclusion of the trial in this matter, whether he is convicted or acquitted. As Mr. Liedtke pointed out, however, a conviction would bar Garcia from ever becoming a citizen of this country, thereby frustrating Mr. Garcia's strong desire, according to Mr. Liedtke. Tr. at 30.

Inasmuch as a guilty verdict will almost certainly result in a different penalty for Garcia than for Solis, these two defendants are not similarly situated. This court is obliged to consider the possibility that these distinct circumstances might give rise to a future conflict between these defendants, even though, at this time, they are apparently united in a defense strategy of absolute innocence and non-cooperation with the Government.

## IV. Waiver

■ Even though criminal defendants may waive the right to a defense conducted by an attorney free from conflicts of interest, there is no "absolute right, constitutional or otherwise, to have such waivers accepted by a court." *United States v. Flanagan,* 679 F.2d 1072, 1076 (3d Cir.1982), *rev'd on other grounds,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). *See also, Wheat,* 486 U.S. at 163, 108 S.Ct. at 1699. A district court may refuse to accept a waiver not only when an actual conflict of interest is present-

ed, but whenever there is a "serious potential for conflict." *Id.* at 164, 108 S.Ct. at 1700.

Having identified potential areas of conflict, this court examined each defendant individually to determine whether he understood his right to conflict-free representation and was, nevertheless, willing to proceed to trial with both Mr. Bettis and Mr. Liedtke as co-counsel. Tr. at 31–58. Both defendants elected to be represented jointly by Mr. Bettis and Mr. Liedtke and to waive any potential conflict. Tr. at 41–42, 55.

■ As noted above, this court need not accept a waiver given in a Rule 44(c) hearing if it appears that there is a serious potential for conflict. *Wheat,* 486 U.S. at 164, 108 S.Ct. at 1699–1700. More importantly, before accepting any waiver, this court must be satisfied that the waiver is knowing, intelligent and voluntary. A review and analysis of the court's lengthy colloquy with both these defendants at the Rule 44(c) hearing raises serious doubts in this regard.

■ Defendant, Garcia, who is a twenty-year-old illegal alien with a sixth grade education, understands little or no English, and cannot be assumed to appreciate the subtleties that govern a Rule 44(c) hearing. *See United States v. Rahman,* 837 F.Supp. 64, 71 (S.D.N.Y.1993). Having answered "yes" to each of the court's questions concerning his awareness of his rights, and "no" to each question concerning whether he was in any way induced to waive his rights, Garcia answered the following question, posed at the suggestion of the Government:

Q. In light of all that you've said, . . . and the potential adverse affect on your defense in this case that the joint representation of you and Mr. Solis by attorneys Bettis and Liedtke would have, why then are you desirous of waiving your right to independent counsel? Why do you want to give up your right to have separate and independent counsel represent you?

A. (Short pause) I wouldn't know how to answer that question.

THE COURT: Okay.

MR. LIEDTKE: Can we ask it a different way, your Honor? Could you ask him

... why do you want Bettis and Liedtke to represent you.

THE COURT: All right.

BY THE COURT:

Q. Why do you want Mr. Bettis and Mr. Liedtke to represent both you and Mr. Solis?

A. I don't know why because I feel that that two, two is better than one they could defend me better than ...

Q. Do you understand that two may not necessarily be better than one? Do you understand all that I tried to explain to you this morning?

A. Yes.

Tr. at 43–44. These responses do not inspire confidence that Garcia understands the nature of the potential conflicts faced by an attorney who represents him jointly with a co-defendant, and whose fees are being paid by an unindicted co-conspirator in the same matter. Indeed, his statement that "two are better than one," made shortly after the court had tried to explain precisely why "two may not be better than one," demonstrates a limited appreciation of the issues surrounding potential conflicts. *Cf. Rahman*, 837 F.Supp. at 71.

The inevitable conclusion that Garcia's waiver was not fully informed, and therefore, not knowing, intelligent and voluntary, mandates rejection of joint representation in this case. Moreover, such a finding decides the disqualification issue, inasmuch as attorneys Bettis and Liedtke, by their own admission, are unable to represent only one defendant in this case. Tr. at 61–62. Nevertheless, it bears mention that José Luis Solis was little more convincing than his co-defendant when asked why he had chosen to waive his right to conflict-free representation. The following colloquy took place between the court and Mr. Solis:

Q. Why do you want Mr. Bettis and Mr. Liedtke to represent both of you?

A. Well, I feel comfortable with them and I feel that they can represent us to the best of their ability.

Q. Well, I'm sure that, I'm sure that they will represent anybody to the best of their ability, that's not the question, that's not the issue here.

A. Um-hum.

Q. The issue is why do you want both of them to represent both you and Mr. Martel?

A. I just feel comfortable with them.

Q. Have they ever represented you before?

A. No, sir, no.

Q. Did you know them before this case?

A. No, sir.

Tr. at 54. And later:

BY THE COURT:

Q. Why do you want Mr. Bettis and Mr. Liedtke to represent you in this case? I think I did ask this question, but it's worth asking again.

A. I just feel that they understand and that we just feel comfortable with them and they can do a good job.

Q. Okay. Well, I'm sure they understand and I'm sure—

A. Yes, sir.

Q. —they're both capable attorneys, but so is Mr. Coughlin.

A. Yes.

Q. Mr. Coughlin is an experienced—no disrespect to Mr. Liedtke or Mr. Bettis, but Mr. Coughlin is an experienced criminal defense attorney, has tried cases in this court for many years, he also understands—

A. Yes.

Q. —the facts of this case and is capable of presenting an effective and vigorous defense. Why then do you prefer—and I'm sure Mr. Liedtke and Mr. Bettis are equally capable of doing the same thing. But in light of all the problems that I described to you about dual representation and how it could adversely impact your defense in this case, why is it that you prefer to have Mr. Bettis and Mr. Liedtke represent both you and Mr. Martel?

A. Because they're from Texas and we can communicate better over there and we can see each other and—

Q. So you feel more comfortable with them because they're from Texas?

A. Yes, sir, and—

Q. But, as I recall, you'd never met them before.

A. No, sir.

Tr. at 57–58.

In sum, given the assurances of attorneys Bettis and Liedtke that they had fully apprised both Garcia and Solis of the potential for conflicts of interest in this case, it is somewhat surprising that Garcia could not cite, or chose not to cite, any of the reasons offered by Mr. Liedtke in support of their application to jointly represent defendants. Mr. Solis only managed to echo Mr. Liedtke's opinion that they were the natural choice to represent Garcia and Solis because they were all "Texas boys." Tr. at 13, 58.

Neither Garcia nor Solis ever affirmatively stated that he did not believe a conflict of interest would arise. Neither defendant affirmatively stated that there could be no question of cooperation because he had decided not to testify against the other or against Adrian Garcia, in the event he were indicted. Throughout the March 21st hearing, attorneys Bettis and Liedtke maintained that the danger of conflict was minimal because their trial strategy would be based upon the complete innocence of their clients. If Garcia and Solis truly understood this simple strategy, it is remarkable that they failed to offer as a justification for their decision to waive their right to conflict-free representation, their belief that such a conflict was unlikely to arise based upon their unified defense.

## V. Conclusion

Although I have concluded that the record does not support a finding that either Juan Garcia Martel or José Luis Solis has made a knowing, intelligent and voluntary waiver of his right to conflict-free representation in this matter, I also find that the payment of defendants' legal fees by Adrian Garcia, who is inculpated in this crime by the defendants' post-arrest statements, creates an insurmountable conflict of interest for attorneys Bettis and Liedtke. Under these circumstances, Messrs. Bettis and Liedtke had little choice, if any, but to adopt the trial strategy they have proposed to the defendants and this court. Only an attorney who is truly independent of any potential influence from Adrian Garcia could properly represent either defendant in this case. Not only are Messrs. Bettis and Liedtke both being paid by Adrian Garcia, B.J. Hooks, Esq., with whom Mr. Bettis is associated, was retained by Adrian Garcia to attempt to retrieve the van seized by the Government in this case. The conclusion that Mr. Hooks, and consequently Mr. Bettis owe a continuing duty of loyalty to Adrian Garcia is inescapable. *Cf.* N.J. R.P.C. 1.9.

To allow a joint representation to proceed on the facts and circumstances of this case would invite the inevitable claim of ineffective assistance of counsel on appeal if the defendants were convicted. Of course, disqualifying Messrs. Bettis and Liedtke will not avoid a claim on a potential appeal that the defendants were denied defense counsel of their choice. Nevertheless, the protection of the right to a fair trial is paramount. However vigorous and sincere attorneys Bettis and Liedtke may be in pursuing a joint defense based upon the absolute innocence of these defendants, one cannot escape the conclusion that Adrian Garcia, and not counsel, will be controlling and orchestrating the defense. To turn a blind eye to this reality would invite disrespect for the integrity of the court, and make a mockery of the Sixth Amendment right to effective assistance of counsel.

The funding of the defense by Adrian Garcia, combined with the prior representation of Adrian Garcia by B.J. Hooks, Esq., Mr. Bettis's associate, creates, at the very least, a troubling appearance that the duty of uncompromising loyalty which every attorney owes to his or her client cannot be discharged in this case. *Cf.* N.J. R.P.C. 1.7(c)(2). In such circumstances a district court must exercise the "broad latitude" discussed in *Wheat* to deny the application for joint representation. Accordingly, I will grant the Government's motion, made at the close of the Rule 44(c) hearing, to disqualify Messrs. Bettis and Liedtke from any representation of defendants in this case. Tr. at 65. The motions for admission *pro hac vice*, filed by attorneys Bettis and Liedtke will be denied. Defen-

dants will continue to be represented by Messrs. Coughlin and Robbins.

## ORDER

This matter having come before the Court on the motion of the United States For an Inquiry Into Potential Conflict of Interest pursuant to Fed.R.Crim.P. 44(c), and on the motions of H. Wayne Bettis, Esq., and J. Brent Liedtke, Esq. to appear *pro hac vice*, and on the motion of the United States to disqualify attorneys Bettis and Liedtke, Henry E. Klingeman, Esq., and George Leone, Esq., Assistant United States Attorneys, appearing on behalf the United States of America, and Michael A. Robbins, Esq., appearing on behalf of Defendant, Juan Garcia Martel, and Richard J. Coughlin, Esq., Federal Public Defender for the District of New Jersey, appearing on behalf of Defendant, José Luis Solis; and, H. Wayne Bettis, Esq., and J. Brent Liedtke, Esq., appearing in support of their *pro hac vice* motions; and,

The Court having considered the briefs and affidavits filed in support of and in opposition to these motions, the supplemental briefs, the arguments of counsel and the testimony at the hearing conducted before this Court on February 21, 1997, and the arguments of counsel and the testimony educed at the hearing before this Court on March 21, 1997, for the reasons set forth in this Court's OPINION, filed concurrently with this ORDER,

It is on this 27th day March, 1997, ORDERED that:

1. H. Wayne Bettis, Esq., and J. Brent Liedtke, Esq., are DISQUALIFIED from representing defendants in this matter;

2. The motion of H. Wayne Bettis, Esq. to appear *pro hac vice* in this matter is DENIED;

3. The motion of J. Brent Liedtke, Esq. to appear *pro hac vice* in this matter is DENIED.

4. Defendants shall continue to be represented in this matter by Richard J. Coughlin, Esq., and Michael A. Robbins, Esq.