[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an exercise of the state's right of eminent domain. The notice of condemnation and assessment of damages was filed by the Commissioner on March 30, 2001. The subject property is a strip of land adjacent to Route 7, consisting of twenty-five thousand two hundred seventy (25,270) square feet (.58 acres), taken for the purpose of widening Route 7, together with slope and drainage easements in favor of the state. The taking of some of the improvements standing on the land including a shed, a well, a stone wall, a parking area, landscaping and signs was incident to the condemnation. The subject strip lies substantially south of the airport on the north and the Ridgefield line on the south.
Route 7 in that area, as a general proposition, is highly congested and virtually choked by vehicular traffic. The assessment of damages for the taking was one hundred twenty thousand two hundred ($120,200) dollars, which was awarded to the owner, Sugar Hollow Park, Inc. That amount was paid into the court and was later released or paid over to the landowner. In terms of the existent zoning regulations, the subject property is located in a LCI-40, a limited roadside commercial industrial zone. The parties are in substantial agreement that the highest and best use of the property falls within the zoning definition of the area, i.e., LCI-40 limited roadside commercial industrial use. CT Page 9987
The landowner filed an appeal with the court and claims to be aggrieved by the award as assessed and is claiming an award in the amount of the difference between the Commissioner's value, one hundred twenty thousand two hundred ($120,200) dollars and the value placed on the condemned rights by the landowner, two hundred sixty-six thousand nine hundred ($266,900) dollars, or one hundred forty-six thousand seven hundred ($146,700) dollars. "Aggrievement is established if `there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . .'" StateMedical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 300
(1987). Being an owner of property establishes that that person has a "specific personal and legal interest in the subject matter of the decision." Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525,530 (1987); Bossert Corporation v. City of Norwalk, 157 Conn. 279, 285
(1968). There can be no serious dispute over the fact that Sugar Hollow Park, Inc. is indeed aggrieved by the actions of the Commissioner.
The function of the trial court in condemnation cases is to determine as nearly as possible the fair equivalent in money for the property taken. Connecticut Printers, Inc. v. Redevelopment Agency, 159 Conn. 407,410 (1970). In these cases, the burden of production and persuasion on the issue of valuation falls upon the property owner. See Edwin Moss Sons, Inc. v. Argraves, 148 Conn. 734, 735 (1961); Levine v. Stamford,174 Conn. 234, 235 (1978). The Commissioner is required to do nothing and, in the words of his counsel, may stand mute. See Merrell v.Southington, 42 Conn. App. 292, 298, 697 A.2d 404 (1996); cert. denied,239 Conn. 918, 682 A.2d 1003 (1996). Although the market value of the taken property is ordinarily the most appropriate measure of fair compensation; Del Vecchio v. New Haven Redevelopment Agency, 147 Conn. 362,363-64 (1960); our Supreme Court has long noted that other measures may be appropriate when the fair market value of damages does not fully compensate the owner. Colaluca v. Ives, 150 Conn. 521, 530 (1963);Winchester v. Cox, 129 Conn. 106, 114-15 (1942). The question of what is just compensation is an equitable one, rather than a strictly legal or technical one. The paramount law intends that the condemnee should be put in as good condition pecuniarily by just compensation as he would have been had the property not been taken. Alemany v. Commissioner ofTransportation, 215 Conn. 437, 444 (1990).
In condemnation proceedings, the court is more than a trier of fact or an arbiter of differing opinions of witnesses. Its duty is that of making an independent determination of value and fair compensation in light of all the circumstances, the evidence and the court's general knowledge as well as its viewing of the premises. In visiting the property, the trier may rely on his visual observations to supplement the evidence presented for his consideration by the witnesses under oath. D'Addario v.CT Page 9988Commissioner of Transportation, 180 Conn. 355, 366 (1980); Tandet v.Urban Redevelopment Commission, 179 Conn. 293, 298 (1979).
Each of the parties offered evidence of the value of the taking through their respective expert witnesses. The owner relies on the testimony of Frank O'Neill, Jr., who appraised the property taken, easement rights, and improvements, and placed a value thereon of two hundred sixty-six thousand nine hundred ($266,900) dollars. The Commissioner's appraiser, Arthur T. Oles, appraised the condemned property, easement rights, and improvements, and placed the value thereon of one hundred twenty thousand two hundred ($120,200) dollars. "The proper measure of damages is the difference between the market value of `the whole tract' as it lay before the taking and the market value of what remained of it thereafter."Gontarz v. Berlin, 154 Conn. 695, 697 (1967); Morgan v. Hill,139 Conn. 159, 161 (1952). Both of the experts expressed their opinions in conformity with this precedent.
The significant, if not the essential, difference in the opinions or value expressed by the experts is attributable to Route 7. Ingress and egress to and from the subject property are perhaps a costly example of vehicular strangulation. At various and sundry times during the course of a day and early evening, the highway south of the location and continuing north to the airport may be commonly described by the colloquialism as "a parking lot." In terms of establishing value, each of the experts chose the comparable sales approach. One property located at 59-63 Mill Plain Road was utilized by each. The difference between the two, however, is traceable to the Commissioner's expert applying a negative adjustment due to the zone difference. The remaining comparables were situated in what might be described as comparably efficient highways or local roads. None was impacted by the disadvantages of the site in issue.
A second difference between the two respective appraisals is how each treats the one (1) acre pond located on the subject property. Due to the large difference in value between the dry usable land and the pond, which is not usable, the landowner's appraiser separated the pond from the dry property prior to calculating the value of it. The landowner's appraiser believed that to include the pond in the overall calculation in value would make the value of the property lopsided, because the Commissioner had not condemned any of that pond property but instead condemned only the dry usable land. The owner's expert placed the value of four thousand ($4000) dollars on the pond property and concluded that the dry property had a value of three hundred thousand ($300,000) dollars per acre or six dollars and eighty-nine cents ($6.89) per square foot.
The Commissioner's expert treated all the property in the same fashion and included the pond and the dry usable land together when he calculated CT Page 9989 the value of the dry land taken. By including the pond in the overall calculation of value, the Commissioner's appraiser reached an average value per square foot of two dollars and fifty cents ($2.50). Assuming, arguendo, that the court accepted the industrial comparables chosen by the Commissioner's expert but then agreed with the landowner on the treatment of the one acre pond, then using the Commissioner's expert's mathematics with the pond as separated out by the Commissioner's appraiser, the appraiser's value would increase by approximately fifty-three thousand ($53,000) dollars.
The Commissioner's appraiser also admitted that he would not use this approach of including the pond together with the dry land if the Commissioner had condemned only the pond, because the resulting award would be too large at one hundred nine thousand ($109,000) dollars.
As of October 1, 1999, the city assessor, using the one hundred (100%) percent valuation, had valued the subject land at four hundred ninety-six thousand eight hundred fifty-seven ($496,857) dollars. As of March 30, 2001, the owner's appraiser had valued the Sugar Hollow Park land in the before situation at one million five hundred ten thousand ($1,510,000) dollars. The Commissioner's appraiser had valued the land at seven hundred forty-five thousand two hundred ($745,200) dollars.
Each of the experts, in calculating the value of the drainage and slope easements, estimated what percentage of the affected land would be "taken," then simply calculated the value taken by using the per square foot value as computed by way of the comparable sales. While each was quite similar in determining the percentage of land affected, the per square foot values, as calculated, presented a substantial difference. That difference is expressed of twenty-two thousand one hundred ($22,100) dollars. The general agreement between the two experts disappeared over the value of the improvements being considered. Those improvements were the shed, the parking area, the well, and the stone wall. The total difference in the evaluation for the improvements is thirteen thousand eight hundred ($13,800) dollars.
The Commissioner raises the issue of lost opportunity, which the owner does not apparently believe to be framed in this particular appeal. True it is that the owner claims that the widening of Route 7 will cut off access to the pond area, thereby depriving it of the development potential of that portion of the land. It must be noted that the pond is an isolated area. It is presently used to market sheds and playground equipment. There is no evidence that came before the court that the condemnation would adversely affect the present use of the pond area nor was there any evidence that a more intense commercial development could have been lawfully built along the road before the condemnation. In CT Page 9990 short, the court is not convinced that there was any evidence which might be said to be credible of an active market for such development at the pond location.
The owner claims that the property rights condemned by the Commissioner can be divided into three categories: A) actual and condemned; B) slope and drainage easement rights taken; and C) improvements. It takes issue with the exclusion of any value for the pond in the Commissioner's appraisal. The owner's position is that the value is placed on the slope and drainage easements, the improvements, and the traffic patterns. The Commissioner as well as the owner talk about the adjustment to the comparable sales and lost opportunities. The court is charged with the duty of making an independent determination of value and fair compensation in light of all of the circumstances, the evidence, its general knowledge and its viewing of the premises. Peter Rock Associatesv. North Haven, 46 Conn. Sup. 458, 467 (2000).
The court, in considering all of these elements and arguments and its own visual observations as well as its general knowledge, is unable to find that the owner has sustained its burden of proof. The Commissioner challenges the owner's arguments as well as his expert's testimony that the widening of Route 7 will cut off access to the pond area, which would deprive it of the development potential of that portion of the land. The pond is an isolated area and is presently used to market sheds and playground equipment. There was no evidence that the condemnation would adversely affect the present use of the pond area and no evidence that the more intense commercial development could have been lawfully built along the road before the condemnation. There was no evidence of an active market for such development at the pond location.
The Commissioner reminds the court that it can award damages for the loss of potential development features only if it finds that of the date of condemnation, the projected development was in the foreseeable future and was (a) legally permissible; (b) physically possible; (c) financially feasible; and (d) will return the greatest value to the developer. SeePeter Rock Associates v. North Haven, supra, 470. This, the owner had not been able to do.
The court finds that the owner' s appeal from the assessment of damages for the partial taking of its property, despite the excellent argument and presentation of counsel, is doomed by the strangulation effect of the traffic congestion on Route 7.
Accordingly, the appeal is dismissed.
Moraghan, J.T.R. CT Page 9991