**516**

UNITED STATES of America, Plaintiff,

v.

James GEBBIE, Ron Hibbs, James Richter, and Midwest Presort Mailing Services, Inc., Defendants.

No. CR2–99–48.

United States District Court,
S.D. Ohio,
Eastern Division.

April 29, 1999.

## OPINION & ORDER

MARBLEY, District Judge.

This criminal matter requires the Court to examine whether attorney James Gilbert's joint representation of Defendants Ron Hibbs and James Richter raises actual or serious potential conflicts of interest, and, if so, whether the Defendants may waive such conflict of interest. For the following reasons, the Court concludes that the multiple representation proposed in this case does not raise an actual or serious potential conflict of interest, that both Defendants have voluntarily, knowingly and intelligently waived their Sixth Amendment right to conflict-free

representation, and that there are compelling reasons for attorney Gilbert to remain as counsel for both Defendants.

## I. Facts and Procedural History

On March 18, 1999, a grand jury returned an eighteen page indictment charging Defendants Hibbs and Richter with conspiracy to commit mail fraud in violation of 18 U.S.C. § 371, conspiracy to make false statements in violation of 18 U.S.C. § 371 and mail fraud in violation of 18 U.S.C. § 1341. Defendants Hibbs and Richter are charged as co-conspirators, along with a third individual, James Gebbie, and a corporation, Midwest Presort Mailing Services, Inc.

Prior to the indictment, the government had been investigating this matter for some time; the official investigation began in 1993. Richter learned of the ongoing investigation in 1995, and retained Gilbert at that time. In 1996, Hibbs also became aware that he was under investigation, and also retained Gilbert. Beginning in 1995, Gilbert spent a great deal of time familiarizing himself with the technical intricacies of the pre-sort mailing world generally and the facts in this case specifically. In preparation for what he considered "the inevitable indictment," Gilbert not only performed substantial legal research, but conducted lengthy field studies at various U.S. Postal operations and Midwest Presort Mailing offices, particularly the Pittsburgh and Columbus offices, which were at issue in the indictment.

On April 21, 1999, the Government filed a "Motion for Hearing Pursuant to Rule 44(c) of the Federal Rules of Criminal Procedure as to Representation of Defendants James Richter and Ron Hibbs." In this Motion, the United States requested a hearing to determine whether Gilbert's joint representation of Richter and Hibbs is a conflict of interest or a potential conflict of interest. The Government's Motion also broached the possibility of (though it did not explicitly move for) Gilbert's disqualification because of the potential for conflicts.

The Court held a Rule 44(c) hearing on April 22, 1999, with counsel for the United States, attorney Gilbert and both Defendants present. The Court apprised the Defendants of their Sixth Amendment right to conflict-free representation, described possible conflicts which might arise in a case of multiple representation, and asked both Hibbs and Richter if they wished to waive such potential conflicts and continue to be represented jointly by Gilbert. Both Defendants answered in open court that they were aware of the possibility of conflict of interests, but that they wished to waive their right to conflict-free representation. The Court further questioned Hibbs and Richter *in camera*, where both Defendants expressed their confidence in and comfort with Gilbert as their attorney, and their strong desire to continue to retain his services as counsel. Gilbert denied that any conflict of interest exists now or will arise in the future, and advised the Court that he had discussed with both Defendants the possible scenarios under which a conflict could emerge, and all were certain that such conflict would not arise. After the Rule 44(c) hearing (and with Defendants' acquiescence), the Court held *in camera* conference with the Assistant U.S. Attorney, wherein she revealed certain facts she believed might demonstrate an actual conflict of interest. While such information must remain confidential at this time, the Court can say that it was not persuaded that this information establishes that an actual or serious potential conflict of interest exists.

## II. Standards Governing Joint Representation

Rule 44(c) of the Federal Rules of Criminal Procedure, which addresses the issue of simultaneous representation of criminal defendants, provides in relevant part:

> Whenever two or more defendants ... are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such representation and shall personally advise each defendant of the right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

The Sixth Amendment guarantees the right to the assistance of counsel of one's choice in a criminal prosecution. *See Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Linton v. Perini,* 656 F.2d 207, 208–09 (6th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318, (1982). This right, however, is not absolute. *See Wheat,* 486 U.S. at 159, 108 S.Ct. 1692; *Wilson v. Mintzes,* 761 F.2d 275, 279 (6th Cir.1985). "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). As such, although a criminal defendant's choice of counsel enjoys a heavy presumption in its favor, this right must be balanced against the Court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160, 108 S.Ct. 1692.

Multiple representation, however, is not *ipso facto* impermissible. The Supreme Court has recognized that "[r]equiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel." *Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (quoting *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)); *see also Wheat,* 486 U.S. at 159, 108 S.Ct. 1692 (in seminal case on joint representation, lawyer had represented without conflict co-defendants in a drug conspiracy case; joint representation issue arose when counsel was asked to represent a third defendant). Indeed, disqualification should be a measure of last resort, and the government bears a heavy burden of establishing that disqualification is justified. *See United States v. Reese,* 699 F.2d 803, 805 (6th Cir.1983); *United States v. Diozzi,* 807 F.2d 10, 12 (1st Cir.1986); *United States v. Washington,* 797 F.2d 1461, 1465 (9th Cir.1986).

Trial courts may permit criminal defendants to waive their Sixth Amendment right to effective assistance of counsel and individual representation when no actual conflict is readily ascertainable. Trial courts also have "wide latitude" in *refusing* waivers of conflicts of interests, not only in cases of actual conflict, but in cases where serious potential for conflict exists. *See Wheat,* 486 U.S. at 163, 108 S.Ct. 1692. In determining whether to disqualify counsel from representation of multiple defendants, the court must balance the qualified right to be represented by counsel of one's choice against the right to a defense conducted by an attorney who is free from conflicts of interest. *See Serra v. Michigan Dept. of Corr.,* 4 F.3d 1348, 1352 (6th Cir.1993). The results of the balancing will turn on the specific facts and circumstances of each individual case. *See Wheat,* 486 U.S. at 164, 108 S.Ct. 1692.

When a criminal defendant knowingly and voluntarily waives his right to conflict-free representation, the import of the second prong of this balancing test is necessarily diminished. Indeed, some courts have held that if the trial judge specifically admonishes the defendants of the potential for future conflict and the defendants choose knowingly, intelligently and voluntarily to waive the right of separate representation, the law requires nothing more, in terms of disqualification of counsel. *See, e.g., United States v. Williams,* 809 F.2d 1072, 1085 (5th Cir.1987). Such waiver will insulate a conviction from appeal. *See United States v. Flanagan,* 679 F.2d 1072, 1076 (3d Cir.1982), *rev'd on other grounds,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984).

### III. Application of the Standards to this Case

Having carefully reviewed the facts in this case, the Court finds that disqualification of James Gilbert from representation of Ron Hibbs and James Richter is not warranted at this time. Several factors underlie this decision.

First, the Court finds that Hibbs and Richter did voluntarily, knowingly and intelligently waive their Sixth Amendment right to conflict-free representation. During the Rule 44(c) hearing, the Court spoke with the

Defendants, informing them of the dangers of joint representation. The Court advised Hibbs and Richter that joint representation may inhibit or prevent an attorney from performing the following functions: conducting an independent investigation in support of each defendant's case, advising each Defendant about possible plea-bargains with the government, cross-examining co-defendants who testify on behalf of the government, conducting jury selection, maintaining the attorney-client privilege, asserting certain defenses (such as relative culpability), offering evidence on behalf of each defendant, and adopting particular sentencing strategies. Hibbs and Richter stated that they were aware of such potential conflicts, that they had discussed these possibilities with Gilbert and with each other, and that they both nevertheless wished to waive their right to conflict-free counsel and continue to retain Gilbert's services. When questioned separately, *in camera*, both Hibbs and Richter narratively expressed their comfort with and confidence in Gilbert's representation. At the end of the Rule 44(c) hearing, the Court was altogether satisfied that Hibbs and Richter fully understood the implications and risks of simultaneous representation, and voluntarily, intelligently and knowingly opted to waive any objections concerning conflicts of interest.

Second, Gilbert has steadfastly maintained that there is no conflict now, and that the chance of a conflict developing in the future is very remote. This Court must take seriously Gilbert's representations, for, as the Supreme Court has noted, "we generally presume that the lawyer [for defendants] is fully conscious of the overarching duty to complete loyalty to his or her client. Trial courts appropriately and necessarily rely in large measure upon the good faith and good judgment of defense counsel." *Burger*, 483 U.S. at 784, 107 S.Ct. 3114. Indeed, "[a]n attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exist or will probably develop in the course of a trial." *Holloway*, 435 U.S. at 485, 98 S.Ct. 1173. Of course, the Court has an independent duty to inquire as to whether a conflict of interest exists.

"Because conflicts are often subtle it is not enough to rely upon counsel, who may not be totally disinterested." *Wheat*, 813 F.2d at 1403. As such, Gilbert's representations are merely persuasive, rather than dispositive, in terms of the Court's ultimate decision on this issue.

Third, the amount of time and effort which Gilbert has invested in this long and complex case indicates that he is the best attorney to represent Hibbs and Richter. Gilbert has been involved in this case since 1995; he has spent literally hundreds of hours familiarizing himself with the pre-sort mail industry, and the personalities and facts in this case. Further, Gilbert has been involved with at least two dozen federal mail fraud cases during his career. The Court finds quite plausible Gilbert's representation that he possesses a high level of knowledge in (1) mail fraud cases generally, (2) the narrow field of pre-sort mail operations at issue here, and (3) with regard to the specific charges set forth in the indictment; and that this knowledge uniquely qualifies him to represent Hibbs and Richter in this case. As Gilbert has committed so much time and effort to this case, the Court is not surprised that Hibbs and Richter wish to retain Gilberts' services now, only a few months before trial.

Fourth, Gilbert has asserted that Hibbs and Richter's interests are closely aligned, and that a united defense will be the most beneficial to each Defendant. Courts have long recognized that a united defense may be the best defense in cases involving co-conspirators. *See, e.g., Burger*, 483 U.S. at 784, 107 S.Ct. 3114 ("in many cases a common defense ... gives strength against a common attack"); *Glasser v. United States*, 315 U.S. 60, 92, 62 S.Ct. 457, 86 L.Ed. 680 (1942) ("joint representation is a means of insuring against reciprocal recrimination"). Gilbert's "united defense" argument is supported by the fact that the Government has offered plea-bargains to both Hibbs and Richter, and both Defendants have rejected these offers. And, as noted above, in the *Wheat* case, one attorney represented two other co-defendants, ironically, without any misgivings from the courts. Apparently, a united defense strategy was expedient for two defendants in

**520**

the very case which allows trial courts to disqualify counsel from jointly representing multiple defendants.

### IV. Conclusion

For the foregoing reasons, the Court will not, at this point, disqualify Gilbert from representing both Defendants Hibbs and Richter. In the absence of a showing of actual or serious potential for conflict, the Defendants' unmistakable choice of counsel should not be denied. The Court is, however, aware that the obligation placed upon it by Rule 44(c) is a continuing one, and the Court will remain vigilant in monitoring the situation. If future developments make further inquiry necessary, the Court will initiate such proceedings at that time. In the meantime, the Court will continue to supervise this matter carefully.

**IT IS SO ORDERED.**