

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2007

# USA v. Joyce

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3153

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation
"USA v. Joyce" (2007). *2007 Decisions.* Paper 93.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/93

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  05-3153
No.  05-3265
_____

UNITED STATES OF AMERICA

v.

ROBERT A.  JOYCE,
ELIANA RASPINO,

Appellants.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court Nos.: 04-cr-0182-1 and 04-cr-0182-2
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
December 10, 2007

Before: McKEE, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: December 12, 2007)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Robert Joyce and Eliana Raspino appeal convictions stemming from their management of two bankrupt supermarkets in West Philadelphia. A jury convicted Joyce and Raspino of bankruptcy fraud and conspiracy. Joyce also was convicted of perjury and interstate transportation of stolen property while Raspino was convicted of money laundering and making false statements to a bank when seeking a loan. Defendants both claim *Brady* violations; in addition, Joyce challenges the sufficiency of the evidence against him and claims that he was wrongfully denied the counsel of his choice.

I.

Because we write for the parties, we repeat only those facts essential to our decision. Since this appeal is from a jury trial, we review the evidence in the light most favorable to the verdict winner, *i.e.*, the Government. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In 1997 Joyce began working as the general manager of two West Philadelphia supermarkets operated by Philadelphia Super Food Store, Inc. (Super Food). Raspino, who lived with Joyce as his longtime companion, was Super Food's Chief Executive Officer and owned 50% of the company. Raspino's business partner, Donald Wargo, owned the other 50% of the business and served as Super Food's President.

In March 1999 Super Food filed for protection under Chapter 11 of the Bankruptcy Code. After a hearing in August 1999, however, the case was converted to a Chapter 7 liquidation. Approximately a week before the August 1999 bankruptcy court hearing, Joyce instructed one of his managers, George Kerrigan, to rent two storage lockers in

2

Wargo's name and begin moving equipment that was part of Super Food's bankruptcy estate from the West Philadelphia stores into the storage lockers. Joyce told Kerrigan that the equipment had to be moved for use at other locations in the event that the West Philadelphia stores were sold. Joyce was occasionally present at the storage facility while Kerrigan and other store employees were unloading and storing the equipment.

Neither Joyce nor Raspino informed the bankruptcy court or trustee that the equipment had been removed. Even worse, when asked at the August hearing if equipment had been removed from the West Philadelphia stores, Joyce replied, "other than perhaps some leased equipment that would have went back to whoever leased it to us, not to my knowledge." Joyce also testified untruthfully that he had not directed anyone to remove equipment from the stores. At the conclusion of the hearing, the bankruptcy judge cautioned: "Mr. Joyce, you'll have to, if you're asked to do anything it can only be done at this point by the Chapter 7 trustee."

In addition to moving equipment without the trustee's knowledge or acquiescence, the evidence showed that Joyce diverted insurance proceeds from two losses suffered by Super Food. Approximately a month after the hearing, Joyce went to the insurance adjuster's office and requested that checks be issued to him personally rather than to Super Food. The following month, Joyce submitted a sworn proof of loss form in which he certified that there had been no change of interest in the insured property. Again, Joyce asked that checks be issued to him personally, as well as to companies in which

3

Raspino had an interest, or to Joyce's personal creditors. When the insurance adjuster inquired about rumors of a possible bankruptcy, Joyce untruthfully assured him that the bankruptcy had been resolved. Joyce never informed the bankruptcy trustee of the insurance payments.

Raspino and Wargo also had a separate venture to operate Progress Plaza, a new supermarket near Temple University. In 1998, Jefferson Bank entered a $322,000 lease-back contract with Raspino and Wargo to purchase equipment for Progress Plaza. Joyce hired contractor Frank Barillari to assist with the Progress Plaza project, and requested that Barillari generate a list of equipment needed for the store. Joyce told Barillari that the list was required by Jefferson Bank in connection with the lease-back contract. Shortly thereafter, Jefferson Bank began issuing checks directly to Barillari.

None of the funds from Jefferson Bank were spent on equipment for Progress Plaza. Instead, Joyce instructed Barillari to transfer the funds to companies owned or controlled by Raspino. Although Barillari protested that no equipment had been purchased or installed at Progress Plaza, he complied with Joyce's request because Joyce had promised that a portion of the Progress Plaza funds would be used to pay him on an antecedent debt. Jefferson Bank discontinued payments on the lease-back contract after its representative visited Progress Plaza and learned that the funds were not being spent on equipment as required by the agreement.

4

## III.

After Joyce and Raspino were indicted in April 2004, they retained counsel from the same law firm. Accordingly, the District Court held a hearing pursuant to Federal Rule of Criminal Procedure 44(c). Although counsel acknowledged that they were law partners, they maintained that there was no actual conflict because they anticipated conducting a joint defense. Counsel also informed the District Court that Joyce and Raspino were willing to execute conflict waivers. Nevertheless, the District Court disqualified Joyce's counsel, finding that joint representation would hinder plea negotiations and that the arrangement presented a high risk of inadvertent breaches of attorney-client confidentiality. The District Court also considered conflicts presented by Defendants' potential common law marriage and the possibility that one might pay the other's attorney fees.

The case was tried in December 2004 and the jury convicted Joyce on all but one count and Raspino on all counts. At the sentencing hearing in June 2005, the Government disclosed that in August 2004 Wargo had pleaded guilty to conspiracy to commit bank fraud in a separate case in the District Court for the District of New Jersey. Defendants moved for a new trial, arguing that had they known of Wargo's plea, they would have subpoenaed him to testify. The Government responded that counsel for Defendants were well aware of Wargo's involvement and could have investigated and subpoenaed him. The Government also stated that in Wargo's interviews with its agents

5

and counsel, he provided no information that exculpated Joyce or Raspino. The District Court denied Defendants' motion for a new trial, and refused to conduct an evidentiary hearing to review whether summaries of the Government's interviews with Wargo were exculpatory.

IV.

Defendants claim that the Government's failure to disclose Wargo's conviction and produce summaries of its interviews with him violated *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. In *Brady*, the Supreme Court held that the Government must produce any evidence that is "material either to guilt or to punishment." *Id.* at 87. To establish a *Brady* violation, a defendant must demonstrate that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defendant; and (3) the suppressed evidence was material to guilt or punishment. *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005).

We are skeptical that the fact of Wargo's conviction is either favorable to the Defendants or material to their guilt or punishment. But we need not reach these issues, as it is clear that the Government did not suppress the fact of Wargo's conviction in the first place. It is well-established that *Brady* does not impose upon the Government the duty to provide a defendant "with information which he already has or, *with any reasonable diligence*, he can obtain himself." *Id.* at 213 (emphasis added). In this case, Joyce and Raspino were clearly aware of Wargo and his prominent role in managing the

6

West Philadelphia supermarkets.  Indeed, the record suggests that Defendants were involved with Wargo in a number of similar business ventures in the Philadelphia and New Jersey regions.  Any reasonably diligent counsel would have known of Wargo's role in the West Philadelphia businesses and could have ascertained whether Wargo might possess exculpatory evidence.  And although we agree with Defendants that they cannot be expected to monitor the dockets of every federal district court in the country, it would not have been unreasonable to have periodically searched the criminal dockets of the federal district courts in the Eastern District of Pennsylvania or the District of New Jersey, the two jurisdictions in which they knew, or could have known with reasonable diligence, that Wargo was under criminal investigation.  Accordingly, the District Court did not err in denying the motion for a new trial pursuant to *Brady*.

Nor did the District Court err in denying Defendants' motion for an evidentiary hearing with respect to the Government's summaries of its interviews with Wargo.  The Government reviewed the interview summaries to determine whether they contained any exculpatory information, as it is required to do.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).  And neither Defendant has made a "plausible showing" that the Government's initial determination was erroneous.  *See Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001) (en banc).  Like the District Court, we do not find that Wargo's interviews contained material and exculpatory evidence.

V.

Joyce also appeals the District Court's order disqualifying his original trial counsel. Our review of such orders proceeds in two stages. First, we exercise plenary review to determine if the order was arbitrary. *United States v. Stewart*, 185 F.3d 112, 120 (3d Cir. 1999). If the District Court reaches a "reasoned determination on the basis of a fully prepared record," its decision is not arbitrary. *Id.* (internal citation omitted). Second, if we determine that the District Court's order was not arbitrary, we review the merits of the District Court's order for abuse of discretion. *Id.*

We find that the District Court's decision was far from arbitrary. The District Court held an evidentiary hearing for the express purpose of considering the issue, at which it heard testimony from counsel for Joyce and Raspino and inquired in detail as to their working arrangements and operating practices. The District Court then issued its decision, in which it reviewed the record in detail and explained its reasons for disqualifying Joyce's counsel.

Nor are we able to find that the District Court abused its discretion in reaching its decision. The potential for conflict was heightened indeed by the fact that Joyce and Raspino were in a long-term romantic relationship and lived together with their child, regardless of their legal marital status. It was therefore quite reasonable for the District Court to be concerned that decisions with regard to trial strategy and plea negotiations could be hindered by a joint representation. Similarly, it was entirely reasonable to

8

conclude that the counsel's sharing of work space and staff presented an unacceptable risk of inadvertent breaches of attorney-client confidentiality. The District Court was not bound to accept counsel's representations that there was no conflict, or to permit Defendants to execute conflict waivers. *See Wheat v. United States*, 486 U.S. 153, 160 (1988). Indeed, even when a trial court finds that defendants are completely aware of the potential conflicts and have voluntarily and intelligently waived any claims arising from such conflicts, it may nevertheless disqualify counsel if it concludes a serious conflict is likely to arise during the proceedings. *See, e.g., United States v. Flanagan*, 679 F.2d 1072 (3d Cir. 1982), *rev'd on other grounds*, 465 U.S. 259 (1984). Under these circumstances, we cannot say that "no reasonable person would adopt the district court's view." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).

## VI.

Finally, Joyce challenges the sufficiency of the evidence supporting his convictions. We review the evidence in the light most favorable to Government, and a verdict will only be overruled if no reasonable juror could accept the evidence as sufficient to support the conclusion of guilt beyond a reasonable doubt. *United States v. Lacy*, 446 F.3d 448, 451 (3d Cir. 2006). The evidence "need not be inconsistent with every conclusion save that of guilt." *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957).

9

We have little difficulty rejecting Joyce's assertion that his bankruptcy fraud convictions should be vacated. A reasonable juror could easily conclude that Joyce was aware of the bankruptcy proceedings both when he ordered the equipment moved to the storage lockers and when he collected the insurance proceeds, and that his failure to inform the bankruptcy court or the trustee establishes his intent to permanently conceal these assets. Joyce's misleading testimony to the bankruptcy court, failure to inform the insurance adjuster of the bankruptcy, and diversion of the insurance funds to personal accounts would only bolster this conclusion.

We are also unpersuaded by Joyce's suggestion that he was unaware that the funds from Jefferson Bank were to be used only for the Progress Plaza project. The jury heard evidence that Joyce was involved in the initial planning of the project, including the submission of proposed equipment invoices for submission to Jefferson Bank, and could rightly conclude that he knew that Jefferson Bank funds were restricted and could not be used for other purposes. Similarly unavailing is Joyce's argument that his testimony before the bankruptcy court was literally true because he stated that he had "perhaps" removed leased equipment from the stores. The jury could fairly conclude beyond a reasonable doubt that Joyce knew the property he removed was not leased equipment, and therefore he knowingly lied when he stated that he had not removed any equipment owned by the store. Accordingly, Joyce's convictions for interstate transportation of stolen property and perjury will also be affirmed.

10

VII.

For the foregoing reasons, we will affirm the judgments of the District Court as to both Joyce and Raspino.